294 S.E.2d 116

The CAMDEN FIRE INSURANCE ASSOCIATION

v.

James Okie JOHNSON, Sadie Johnson, et al.

No. 15354.

Supreme Court of Appeals of West Virginia.

July 1, 1982.

---

Sanders & Austin and Lane O. Austin, Princeton, for appellants.

Sanders & Blue and Fred O. Blue, Bluefield, for appellee.

McGRAW, Justice:

This case comes to us on appeal from a final order of the Circuit Court of Mercer County, entered January 28, 1981, which rendered a declaratory judgment in favor of the appellee, Camden Fire Insurance Association. The circuit court found that under the terms of the homeowner's insurance policy issued by the appellee to appellant James Oakie Johnson, the appellee was not obligated to defend appellant Sadie Johnson in a personal injury suit pending in the circuit court or to pay any damages awarded against her therein. We reverse.

On August 1, 1979, the four year old grandson of James Oakie Johnson and Sadie Johnson was struck by an automobile and injured while he was in the care and control of Sadie Johnson. By the terms of a contract entered into by the child's mother, Stella Hubbard, and the Department of Welfare, Sadie Johnson was paid approximately $80 per month to care for and supervise the child in her home while his mother worked. A similar arrangement existed with respect to the child's younger brother.

At the time of the accident, the Johnsons were insured against personal liability for accidental injuries under a homeowner's insurance policy issued to James Oakie Johnson by the appellee, Camden Fire Insurance Association. The terms of the policy obligated the appellee to defend any suit brought against the Johnsons seeking damages for such injuries. The policy specifically excluded from coverage, liability for any "bodily injury ... arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

On January 10, 1980, Stella Hubbard brought a civil action in the Circuit Court of Mercer County, individually and on behalf of the infant, against William Waddell, the driver of the vehicle which struck the child, and Sadie Johnson for the negligent injury of the infant. A settlement was subsequently achieved between the plaintiffs and Waddell. The appellee filed an answer to the complaint in the civil action on behalf of Sadie Johnson and then instituted this declaratory judgment action to determine its liability, if any, under the terms of the homeowner's policy for any judgment that might be rendered against her. The appellee asserted below that Sadie Johnson was engaged in a "business pursuit" within the meaning of the policy's exclusionary clause at the time of the accident by virtue of the agreement with the

Department of Welfare. The circuit court found that by rendering day care services for compensation, Sadie Johnson was in fact engaged in a business pursuit. The court ruled that the insurance policy did not obligate the appellee to defend her in the civil action or to pay any judgment rendered against her therein. It is from this ruling that the instant appeal is prosecuted.

The "business pursuits" exclusion has become a standard feature of homeowner's insurance policies. It is intended as a limitation upon the comprehensive personal liability coverage provided in such policies. The wording of the exclusion before us is typical. The question presented for our determination is whether the activities of Sadie Johnson constituted a business pursuit within the meaning of the exclusionary clause so as to exclude the appellee from liability.

█ The threshold question in our inquiry is the meaning of the term "business pursuits". Some courts have held that for purposes of an exclusionary clause such as the one involved here, the term "business pursuits" should be taken as "embracing everything about which a person may be engaged where profit is a motive." *Salerno v. Western Casualty & Surety Co.*, 336 F.2d 14, 19 (8th Cir. 1964). Other jurisdictions have noted, however, that "[n]ot every activity undertaken for profit is necessarily a business pursuit." *O'Connor v. Safeco Insurance Co. of North America*, 352 So.2d 1244, 1245 (Fla.App.1977). The majority view is that "business pursuits" comprehends two elements: continuity and profit motive. The reasoning of this approach was succinctly stated in *Home Insurance Co. v. Aurigemma*, 45 Misc.2d 875, 879, 257 N.Y.S.2d 980, 985 (1965).

The meaning of the term "business pursuit" as used by plaintiff in its exclusionary clause must be viewed in the light of the understanding of the ordinary insured, if unambiguous, or, if otherwise, to be construed against the insurer who prepared the form and created the wording. Webster's Third New International Dictionary, Unabridged, defines the "key words" in the subject policy as follows:

"*Business.* a commercial or mercantile activity customarily engaged in as a means of livelihood."

"*Pursuit.* an activity that one pursues or engages in seriously and continually or frequently as a vocation or profession".

"*Trade.* the business one practices or the work in which one engages regularly; one's calling: gainful employment: means of livelihood."

"*Profession.* a calling requiring specialized knowledge and often requiring long and extensive preparation including instructions in skills and methods."

"*Occupation.* that which principally takes up one's time, thought and energies, especially one's regular business or employment, also whatever one follows as the means of making a livelihood."

Finally, among lay dictionaries, Oxford Universal Dictionary, Third Edition (Rev.) defines these terms as follows:

"*Business.* Stated occupation, profession or trade * * * commercial transaction or engagement * * *

"*Pursuit.* * * * the action of following or engaging in something, as a profession, business, recreation, etc., that which one engages or follows * * *."

From all of the aforesaid authorities it is clear that two elements are present in almost every definition, either expressly or by implication: *first, continuity, and secondly, the profit motive.* As to the first, there must be a "customary engagement" or a "stated occupation"; as to the latter, there must be shown to be such activity as a "means of livelihood"; "gainful employment"; "means of earning a living"; "procuring subsistence or profit"; "commercial transactions or engagements". (Emphasis in original.)

This definition of "business pursuits" as continuous or regular activity, done for the purpose of earning a profit or making a living has been adopted by a number of jurisdictions. *See, e.g., Crane v. State*

*Farm Fire & Casualty Co.*, 14 Cal.App.3d 727, 729, 92 Cal.Rptr. 621, *rev'd on other grounds*, 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971); *O'Connor v. Safeco Insurance Co. of North America, supra, State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981); *American Family Mutual Insurance Co. v. Bentley*, 170 Ind. App. 321, 352 N.E.2d 860 (1976); *Allied Mutual Casualty Co. v. Askerud*, 254 Minn. 156, 94 N.W.2d 534 (1959); *Bertler v. Employers Insurance of Wausau*, 86 Wis.2d 13, 271 N.W.2d 603 (1978); *Annot.* 48 A.L.R.3d 1096 (1973).

We think the majority approach to the meaning of the term "business pursuits", within a homeowner's policy excluding from liability coverage injuries arising out of such activities by an insured, is consistent with the terms of this policy. The policy in question defines "business" to mean "a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purpose." It is well settled that "the terms of an insurance policy should be understood in their plain, ordinary and popular sense, not in a strained or philosophical sense." *Polan v. Travelers Insurance Co.*, 156 W.Va. 250, 255, 192 S.E.2d 481, 484 (1972). We find the definitions relied on by the New York court in *Aurigemma, supra*, to be accurate and to reflect the ordinary meaning attached to the respective terms.

We also note that similar interpretations of the term "business" have been employed in this jurisdiction in other contexts. In *Weatherford v. Arter*, 135 W.Va. 391, 395, 63 S.E.2d 572, 574 (1951), the Court made the following statement concerning the use of the words "business" and "industry" in the workmen's compensation statutes.

The term "business" is sometimes given a broad meaning and is also used in a narrower sense. When used in its broad sense, it is said to embrace everything with respect to which a person can be employed. The word is often synonymous with calling, occupation, or trade, engaged in for the purpose of obtaining a livelihood, or profit or gain. 12 C.J.S.,

Business, pages 762 to 768; Black's Law Dictionary, Third Edition, Page 260; Webster's New International Dictionary, Second Edition, Unabridged, G. & C. Merriam Company, 1940, page 362.

Manifestly the terms "industry" and "business", as used in the above quoted statute, mean, and relate to, an occupation or an employment engaged in for the purpose of obtaining a livelihood or for profit or gain.

In addition, the statutes relating to our business and occupation tax provide:

"Business" shall include all activities engaged in or caused to be engaged in with the object of gain or economic benefit, either direct or indirect. "Business" shall not include a casual sale by a person who is not engaged in the business of selling the type of property involved in such casual sale.... W.Va.Code § 11–13–1 (1974 Replacement Vol.).

Both of the above-quoted examples anticipate that a "business" is an activity in which a person engages on a regular basis for profit.

We conclude, therefore, that the term "business pursuits", when used in a clause of an insurance policy excluding from personal liability coverage injuries "arising out of business pursuits of any insured", contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood.

■ The question of whether a particular activity or course of conduct comes within this definition of "business pursuits" must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case. The courts have reached divergent results when faced with the question of whether one who "babysits" or provides day care for infants in his or her home for pay is engaged in a "business pursuit". In *Crane v. State Farm Fire & Casualty Co., supra*, the insured had orally agreed to care for a neighbor's two children from 7:40 a. m. to approximately 5:30 p. m. on the five days per week the children's mother worked. In return the insured was paid

$20 per week the first week and thereafter $25 per week, plus a sack of groceries worth about $5. The arrangement continued for two or three months before one of the children was injured while in the insured's care. The California court looked at the nature of the insured's activities and concluded that she was engaged in a "business pursuit" under the terms of the policy in caring for the children because the child care which she was rendering was more than a casual accommodation.

An almost identical factual situation was presented in *Nationwide Mutual Fire Insurance Co. v. Collins*, 136 Ga.App. 671, 222 S.E.2d 828 (1975). The insured kept a friend's children from 7:00 a. m. to 5:00 p. m. on weekdays while their mother worked. The insured received $5 per day as compensation. The Georgia court, however, found that the insured's activities did not come within the "business pursuits" exclusion.

Mrs. Collins [the insured] did not offer services as a baby-sitter or nursery, keeping only the Mullinax children; she was not licensed as such, and never so advertised; sometimes she kept the children for nothing; and she used the money to help buy food for the children and to pay her expenses in taking ceramic lessons one day a week.

\*   \*   \*   \*   \*   \*

Those of us who may have left our children or grandchildren in the home of a neighbor to care for during the day, and for pay, would be hard put to conclude that our neighbor or her teen-age daughter was engaged in a business pursuit .... We are unwilling to hold that babysitting for pin money is a commercial enterprise. 222 S.E.2d at 829–830.

The distinguishing characteristic of the *Collins* case is the Georgia court's recognition of the fact that one may regularly engage in a particular activity for which he or she receives compensation without being motivated by the prospect of profit. In *Crane, supra*, the California court apparently equated compensation with profit motive. In *Collins*, however, the Georgia court looked beyond the mere fact of compensation to determine whether the insured was in fact engaged in a business pursuit. It took notice of the fact that Mrs. Collins was not licensed to render day care services, that she did not advertise or offer her services to the public at large and that she sometimes rendered her services without receiving compensation therefor. · In essence the court concluded that Mrs. Collins rendered her services as a form of neighborly accommodation rather than for the purpose of obtaining compensation. Other courts have used similar criteria for determining whether babysitting and rendering day care services constitute a "business pursuit". *See Republic Insurance Co. v. Piper*, 517 F.Supp. 1103 (D.C.Colo.1981); *Stanley v. American Fire & Casualty Co.*, 361 So.2d 1030 (Ala.1978); *State Farm Fire & Casualty Co. v. Moore*, 103 Ill. App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981).

The facts of this case are strikingly similar to those in *Collins*. Sadie Johnson cared for her two grandchildren in her home during the week while their mother worked. She was not licensed to operate a day care center in her home and did not offer or advertise her services as a babysitter. It is interesting to note that the Department of Welfare, which approved the day care agreement and provided Stella Hubbard with funds to compensate Sadie Johnson for caring for her grandchildren, is also the licensing authority for child care facilities, including day care centers. W.Va.Code § 49–2B–1 *et seq.* (1981 Cum. Supp.). There is no indication that the Department viewed Sadie Johnson's activities as constituting a child care business which would require a license under the statute. She never cared for any children other than her grandchildren, even though the Department of Welfare had approved her to provide day care for a total of four children and had asked her on occasion to keep other children in her home. Sadie Johnson did not begin to receive compensation for caring for the injured child until February of 1978. Prior to that time she had kept her grandson on numerous occasions without compensation. She testified at trial that she would have kept the chil-

dren in her home, and often did after 1978, without compensation from the Department of Welfare.

We are of the opinion that these facts demonstrate that Sadie Johnson's motive was not to earn a living or to make a profit by keeping children in her home. Rather, she was induced to care for and supervise her grandchildren by the love and affection she held for them and by a desire to assist their mother in finding and keeping a job. Under these circumstances we must conclude that Sadie Johnson was not engaged in a business pursuit at the time of the accident. Consequently, we hold that an individual who cares for children in his or her home as a neighborly or kindred accomodation to a friend or relative is not engaged in "business pursuits" within the meaning of an exclusionary clause in an insurance policy, where such individual is not licensed to carry on such activity, does not advertise or offer his or her child care services to the general public and is not always compensated for rendering such services.

In accordance with this holding, we conclude that the Circuit Court of Mercer County erred in finding that Sadie Johnson was excluded from personal liability coverage under the terms of the insurance policy and in ruling that the appellee had no obligation to defend the civil action or to pay any damages resulting therefrom. In view of our resolution of this issue, we need not address the other assignments of error raised by the appellants. The order of the Circuit Court of Mercer County rendering declaratory judgment in favor of the appellee is therefore reversed and the case is remanded to that court.

Reversed and remanded.