966 F.2d 1441
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
The AETNA CASUALTY AND SURETY COMPANY, a Connecticut
corporation, Plaintiff-Appellee,
v.
The BARBOURSVILLE AMERICAN LEGION POST 177, INCORPORATED, A
West Virginia corporation, Defendant & Third Party
Plaintiff-Appellant,
v.
The BARBOURSVILLE REAL ESTATE AND INSURANCE, INCORPORATED,
Third Party Defendant.
The AETNA CASUALTY AND SURETY COMPANY, a Connecticut
corporation, Plaintiff,
v.
The BARBOURSVILLE AMERICAN LEGION POST 177, INCORPORATED, A
West Virginia corporation, Defendant & Third Party
Plaintiff-Appellee,
v.
The BARBOURSVILLE REAL ESTATE AND INSURANCE, INCORPORATED,
Third Party Defendant-Appellant.
 Nos. 91-1686, 91-1687.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1992
Decided: June 17, 1992
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Huntington. Charles H. Haden II, Chief District Judge. (CA-90-748-3)
 Argued: Cheryl Lynne Connelly, Huntington, West Virginia, for Appellant American Legion Post 177; Christopher P. Bastien, Charleston, West Virginia, for Appellant Barboursville Real Estate and Insurance. Avrum Levicoff, ANSTANDIG, LEVICOFF & MCDYER, P.C., Pittsburgh, Pennsylvania, for Appellee.
 On Brief: Charles F. Bagley, III, Huntington, West Virginia, for Appellant American Legion Post 177; Susan Basile, Charleston, West Virginia, for Appellant Barboursville Real Estate and Insurance. Linda B. McCormick, ANSTANDIG, LEVICOFF & MCDYER, P.C., Pittsburgh, Pennsylvania, for Appellee.
 S.D.W.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 The question is whether a liability insurance policy issued by Aetna Insurance Company (Aetna) to Barboursville Post 177 of the American Legion (the Legion) covered a wrongful death claim against the Legion based on allegations that the Legion sold liquor over-the-bar to a person who later, while driving under the influence, collided with the decedent's vehicle and proximately caused her death. In Aetna's diversity action against the Legion seeking a declaration of noncoverage, the Legion filed a third-party claim against its non-diverse insurance agent, Barboursville Real Estate and Surety Company (Barboursville or the agent), claiming that if Aetna's policy did not provide coverage, the cause was its agent's negligence. The district court gave summary judgment for Aetna on its non-coverage claim, and dismissed without prejudice the Legion's third-party claim against Barboursville. On the resulting appeals by the Legion and Barboursville, we affirm as to both.
 
 
 2
 * The Legion purchased a commercial general liability policy from an Aetna agent, Barboursville. The policy excluded coverage for:
 
 
 3
 "[B]odily injury" or "property damage" for which any insured may be held liable by reason of:
 
 
 4
 (1) Causing or contributing to the intoxication of any person;
 
 
 5
 (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
 
 
 6
 (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
 
 
 7
 This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.
 
 
 8
 The Legion is a tax-exempt, nonprofit, fraternal veterans' organization. Licensed by the state to sell alcohol as such, the Legion operates a bar which is open seven days a week, selling alcoholic beverages to its members, members' family members, and members' guests. Approximately forty percent of the Legion's gross income from all revenue activities derives from these sales. The Legion contributes approximately fifty percent of its income over expenses to the community. The remaining fifty percent goes toward purchasing the building in which the Legion is located.
 
 
 9
 In June of 1990, the Estate of Richard Eric King brought suit against the Legion in state court alleging that the Legion served intoxicating beverages to patron Roger Dillon, that Dillon left the Legion intoxicated, and that while intoxicated Dillon negligently drove his vehicle into King's, causing King's death.[1] Aetna denied coverage and brought this declaratory judgment action seeking a declaration of non-coverage. The Legion, although asserting it was entitled to coverage, impleaded Barboursville, alleging that if it was not covered, the lack of coverage resulted from breaches of duty by Barboursville. Cross motions for summary judgment were filed. The district court granted summary judgment for Aetna on its claim of non-coverage and dismissed the Legion's thirdparty claim against Barboursville without prejudice.
 
 
 10
 The Legion's appeal of the summary judgment in favor of Aetna, and Barboursville's appeal of the dismissal without prejudice of the Legion's third-party claim against it have been consolidated.
 
 II
 
 11
 We review de novo the district court's grant of summary judgment in favor of Aetna declaring that as a matter of law the policy excluded coverage. Higgins v. E. I. Du Pont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988).
 
 
 12
 The coverage issue, quite simply, is whether, within the intended meaning of the policy's exclusion provision, the Legion, in indisputably deriving income from "selling, serving or furnishing" alcoholic beverages from its bar, was "in the business" of doing so.
 
 
 13
 Predictably, the Legion has argued primarily that the exclusion unambiguously does not apply to the activity of a not-for-profit fraternal organization which is not principally engaged in commercial sales of alcoholic beverages but only does so incidentally, as an eventually break-even service to its members and their families and guests. The Legion says that because the exclusion has this unambiguous meaning, the Legion was entitled in Aetna's action to a declaration of coverage as a matter of law. Alternatively, it contends that if the provision does not unambiguously have that meaning, its very ambiguity invokes the West Virginia rule that ambiguous terms in an insurance policy-particularly in exclusion provisions-are construed against the insurer. Under that rule, which honors the "reasonable expectations" of insureds over ambiguous provisions drafted by insurers, the Legion claims that it was entitled, on an alternative basis, to judgment as a matter of law.
 
 
 14
 As predictably, Aetna has contended, and the district court concluded, that "in the business of" unambiguously includes the specific sales of alcoholic beverages made by the Legion under the circumstances indisputably established here. Essentially, Aetna's contention is that notwithstanding its not-for-profit form of organization and the charitable purposes of its charter, the Legion was, as to this particular activity, "in [the] business."
 
 
 15
 As the parties at least tacitly agree, the initial interpretive issue is whether, as applicable to undisputed material facts of record, the policy's exclusion is unambiguous on its face. And, as they also at least tacitly agree, this is an issue of law for the court. Both then contend, in primary positions, that as a matter of law it is unambiguous, thereby making its application to the facts of record also a matter of law for the court. See Transamerica Insurance Company v. Arbogast, 662 F. Supp. 164, 168 (N.D.W. Va. 1987) (under West Virginia law, unambiguous insurance provisions are to be "applied", not "construed", by courts). At this point, they of course part company, arguing for diametrically opposed unambiguous meanings, with the Legion taking a fall-back position that if the provision is ambiguous as a matter of law, West Virginia law requires interpretation in favor of it as insured, under such cases as Polan v. Travelers Insurance Co., 192 S.E. 2d 481, 484 (W. Va. 1972).
 
 
 16
 At the outset, we agree with the parties' primary agreed position that the exclusion provision is facially unambiguous in its intended application to the undisputed material facts of record. We therefore address, as a question of law dispositive of the coverage issue, the provision's intended meaning.
 
 
 17
 The interpretive issue of intended meaning is controlled by West Virginia law. There is, of course, no West Virginia decision directly, or by compellingly close factual analogy, on point. We agree with the district court, however, that there are sufficient indications in decisions of the West Virginia Supreme Court respecting the commonly understood meaning of "business" and the application of the term to charitable organizations that we may properly predict how that court would decide the interpretive issue here.[2] Surveying the relevant insurance law decisions, the parties have identified two basic approaches taken by other state courts to the precise coverage issue here: whether and under what circumstances a not-for-profit "charitable" organization may be considered "in business" in carrying on particular activities. They go in opposite directions. Focusing on the not-for-profit form of organization as the determining factor, some courts have taken the view that organizations such as the Legion here simply cannot be considered to be "in business"-presumably for any purpose. See Newell-Blais Post # 443, Veterans of Foreign Wars of the United States, Inc. v. Shelby Mut. Co., 487 N.E.2d 1371 (Mass. 1986); Laconia Rod and Gun Club v. Hartford Acci. and Indemnity Co., 459 A.2d 249 (N.H. 1983). Other courts, however, focusing instead on the particular activity at issue, and specifically rejecting the Massachusetts and New Hampshire decisions, have held that not-for-profit organizations can indeed be "in the business" of those activities notwithstanding they are not generally "in business." Fraternal Order of Eagles, Cle Elum, Aerie No. 649 v. The General Acci. Ins. Co., 792 P.2d 178 (Wash. Ct. App. 1990); McGriff v. United States Fire Ins. Co., 436 N.W.2d 859 (S.D. 1989).
 
 
 18
 We believe that two decisions of West Virginia's highest court point strongly in the direction taken by the latter courts.
 
 
 19
 In Adkins v. St. Francis Hospital, 143 S.E.2d 154 (W. Va. 1965), the court considered whether, as a fundamental proposition, the doctrine of charitable immunity should any longer be available to nonstock, not-for-profit organizations sued for the negligence of their agents or servants. In abrogating the doctrine, the court focused principally on the fact that, viewed practically, such organizations are, despite their underlying "charitable" purposes, engaged in the business of providing services for monetary compensation. In a critical passage the court said.
 
 
 20
 What is the nature of the defendant hospital in the instant case? As heretofore noted, it has been incorporated as a nonstock, non-profit hospital. It has been referred to herein and by the parties as a charitable hospital. But is"charitable" a properly descriptive word in designating its character in consideration of the question presented here ... It appears clear that the major portion of its operating funds is raised by charges made for the care and treatment of patients. The defendant renders a valuable service and expects to be paid for such service. This is as it should be. The defendant makes a worthy contribution toward the alleviation and care of the ills of mankind but, while in no way detracting from the estimable value of such contribution, it functions as a business and as such it must bear all the responsibilities of a business.
 
 
 21
 Id. at 158. Adkins, at the very least, flatly rejects the view upon which the Legion strongly relies that not-for-profit organizations cannot by their very natures be considered "in business" for any purpose.
 
 
 22
 In Camden Fire Insurance Asso. v. Johnson, 294 S.E.2d 116, 118 (W. Va. 1982), the court was required to interpret the intended meaning of a "business pursuits" exclusion in a homeowner's liability policy. In the course of holding that the exclusion did not apply to a woman's conduct while babysitting her grandchild for pay, the court opined that "business pursuits" in this context contemplates two elements: continuity of practice and profit motive. Id. at 118. Because the grandmother was not licensed to perform day care, did not advertise her services, and was motivated more by affection than any profit motive, the court concluded that she was not engaged in a "business pursuit" as so interpreted. In the court's view, the "pursuit" at issue was neither a continuous one nor one undertaken for profit.
 
 
 23
 Taking this as the West Virginia test for assessing whether particular conduct is, for insurance coverage purposes, to be considered the doing of, or pursuing, or being in "business", we think the Legion's alcoholic beverage sales would clearly qualify. The Legion was specifically licensed to make the sales, did so continuously during normal business hours of similarly engaged enterprises, and derived income from the activity.[3] We therefore agree with the district court that in making the alleged sales here in issue, the Legion was, within contemplation of the Aetna policy, "in the business" of selling alcoholic beverages and that the policy therefore excluded coverage of the claim at issue.
 
 II
 
 24
 We turn now to Barboursville's appeal from the district court's dismissal without prejudice of the Legion's third-party claim against it.
 
 
 25
 Barboursville's contention is that this was a third-party claim properly filed under Fed. R. Civ. P. 14(a) as to which the district court had ancillary jurisdiction, and that its failure to exercise jurisdiction over the claim was an abuse of discretion. Barboursville seeks a reversal of the order and reinstatement of the claim for disposition in the district court.
 
 
 26
 There is no doubt that if this was a properly filed third-party claim under Fed. R. Civ. P. 14(a), the district court could have exercised ancillary jurisdiction over it notwithstanding the non-diversity of its parties. And although there is a real question whether it is the type of derivative, pass-through-liability claim actually contemplated by that rule, see 3 Moore's Federal Practice pp 14.02, 14.04, we may assume for purposes of this appeal that it could have been treated as one, see Old Republic Ins. Co. v. Concast, Inc., 99 F.R.D. 566 (S.D.N.Y. 1983).
 
 
 27
 If ancillary jurisdiction is thus assumed, the question becomes simply whether the district court nevertheless acted within its discretion in declining to consider this claim once the primary claim was dismissed. Barboursville's argument is that, having devoted the time and energy it had given the case in district court, it would be unfairly prejudiced by being exposed to a new round on the same claim in state court. Although it does not seek further relief in this court than remand, it suggests that the district court could have decided the claim in its favor on the basis of a West Virginia case, Bunch Construction Co., Inc. v. U.S.F. & G., C.A. No. 2:87-0812 (S.D.W. Va. 1990). This, Barboursville contends, emphasizes the prejudice it is caused by being forced to defend again from scratch in another court. Considerations of judicial economy, it says, required the district court to decide a claim ripe for adjudication rather than dismiss it without prejudice to its reinstitution in a state court.
 
 
 28
 We disagree. The decision whether to exercise ancillary jurisdiction over a non-federal-question, non-diversity claim once a primary claim has been dismissed is committed to the district court's discretion. We think the discretion exercised here was not abused. In the first place, as indicated, there is a real question whether this is the type of third-party claim contemplated by Rule 14(a), hence one as to which ancillary jurisdiction can be invoked because of the direct interrelatedness of primary and third-party claims. Furthermore, in order to challenge successfully the dismissal without prejudice of a properly grounded third-party claim, a defendant must show more prejudice than the mere prospect of renewed litigation. Stern v. Barnett, 452 F.2d 211 (7th Cir. 1971). We see no more than that here. Arguably, if there were clearly dispositive authority for deciding a claim in a third-party defendant's favor, sufficient prejudice from a dismissal without prejudice might be shown. But, without purporting to decide the matter at this point, we do not think the Bunch Construction Co. case so clearly dictates the application claimed for it by Barboursville. Its applicability to the facts here is certainly arguable on the record before the district court.
 
 
 29
 Accordingly we affirm the district court's dismissal without prejudice of the Legion's third-party claim against Barboursville.
 
 
 30
 As to No. 91-1686: AFFIRMED As to No. 91-1687: AFFIRMED
 
 
 
 [1]
 These are the material facts not in genuine issue that we consider determinative of the coverage issue as a matter of law under Fed. R. Civ. P. 56
 
 
 [2]
 On this basis, we deny the Legion's motion that we certify the coverage issue to the West Virginia Supreme Court
 
 
 [3]
 These, we conclude, are the material facts not in genuine issue that warrant the conclusion that, as a matter of law, the intended meaning of the exclusion unambiguously includes as "business" the alcoholic beverage sales here at issue, hence summary judgment for Aetna. The parties put in the summary judgment record a considerable amount of other available evidence mainly devoted to various persons' specific understandings of whether coverage was intended or assumed by insurer and insured, whether Barboursville was Aetna's or the Legion's agent so as to impute its understandings to one or the other, and the like. Because we conclude initially that, as the parties themselves primarily agree, the language is unambiguous in its intended application, this is all "extrinsic" evidence which would be relevant only if ambiguity were present. Because it is not, for summary judgment purposes any disputes reflected in this body of extrinsic evidence-and there are many-do not relate to "material facts", hence do not prevent summary judgment. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("only disputes over [material] facts will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted")