458 S.E.2d 774

**WEST VIRGINIA INSURANCE COMPANY, Plaintiff Below, Appellant,**

v.

**Darryl W. LAMBERT; Robert W. Schellhaas, Linda J. Schellhaas, Husband and Wife; Quality Reviews, Inc., A Corporation; ITT Hartford Insurance Group, A Corporation; and USAA, A Corporation, Defendants Below, Appellees.**

No. 22597.

Supreme Court of Appeals of West Virginia.

Submitted May 9, 1995.

Decided May 18, 1995.

Christopher D. Janelle, Henry, Grant, Taylor & Janelle, Martinsburg, for appellant.

B. Craig Manford, Martinsburg, for appellee Darryl W. Lambert.

Charles F. Printz, Jr., Bowles, Rice, McDavid, Graff & Love, Martinsburg, for appellee ITT Hartford Ins. Group and USAA.

Lawrence M. Schultz, Burke & Schultz, Martinsburg, for appellees Robert W. Schellhaas, Linda J. Schellhaas, and Quality Reviews, Inc.

## PER CURIAM:

West Virginia Insurance Company (WV Insurance), the plaintiff below and appellant herein, appeals a final order of the Circuit Court of Berkeley County, which denied its request for a judgment notwithstanding the verdict or, in the alternative, for a new trial following a jury verdict adverse to its insured, Darryl W. Lambert. The jury found Mr. Lambert was negligent when he allowed a refuse fire to get out of control and burn a barn belonging to his neighbor. The jury also determined insurance coverage was available because Mr. Lambert's actions did not fall under the "business pursuits" exclusion of his policy. This Court has reviewed the petition for appeal, the briefs of the parties, and all matters of record. We are of the opinion that the judgment of the circuit court should be affirmed.

## I.

## FACTS

Robert W. and Linda J. Schellhaas, husband and wife, were neighbors and friends of Mr. Lambert. Mr. Lambert was an experienced carpenter, but remained unemployed throughout most of 1990. Mr. and Mrs. Schellhaas asked him to perform various odd jobs and chores around their home. The evidence shows that Mr. Lambert, among other things, was paid to install a window, place panels of wood in part of their basement, and install a lamp post in their yard. Mr. Lambert also cared for the Schellhaas's dogs on occasion. Some of the

work was gratuitous. Mr. Schellhaas described their relationship with Mr. Lambert "as primarily one of charitable concern for an unemployed neighbor."[1]

Mr. Lambert installed drywall on a large outbuilding which was owned by Mr. and Mrs. Schellhaas and which was used as a barn/workshop/garage.[2] Although he was paid a nominal amount for this work, he did it in large part because he sang while others played music in the barn and wanted to stay warm.

On January 28, 1991, Mr. Lambert was asked to pick up construction debris from the Schellhaas's yard that remained after an addition was added on their home. The contractor who built the addition failed to clean up the yard after completing the work. Mr. Lambert gathered up the materials and placed them in a large trench that was used as a burning pit. The trench was approximately twenty feet from the barn. Mr. Lambert started the fire and remained in the area to monitor the burning. He walked away from the trench to gather more debris from the back of the yard and, when he returned, the fire had escaped the pit area and started to burn the barn.

Mr. Lambert ran to the house and shouted to Mr. and Mrs. Schellhaas to call 9–1–1 because the barn had caught fire. He ran back and attempted to fight the fire with a garden hose to no avail. The barn was a total loss.[3]

WV Insurance filed an action in the Circuit Court of Berkeley County to determine its liability under Mr. Lambert's homeowner's insurance policy and the amount of damages due Mr. and Mrs. Schellhaas. An amended complaint was filed to add Mr. Lambert as a party defendant. Mr. and Mrs. Schellhaas's insurance carriers filed counterclaims seeking subrogation of damages they paid for the loss.[4] These carriers also filed crossclaims against Mr. Lambert asserting the damage to the property was proximately caused by his negligence.

At trial, Mr. Lambert accepted full responsibility for causing the fire. He testified it was his duty alone to monitor the burning. He further testified that he pleaded guilty to charges he allowed the fire to escape and paid a fine.

On the verdict form, the jury found Mr. Lambert was negligent in causing the barn fire. It also found he was not engaged in a business pursuit when he cleaned the debris from the yard.

## II.

### BIFURCATED TRIAL

WV Insurance argues the trial court erred in trying the issues of coverage and liability together because the mention of insurance had an unfair prejudicial effect upon the jury verdict. Prior to the trial of this case, WV Insurance made a motion to bifurcate. By order entered December 23, 1993,

---

1. WV Insurance contends it was error to allow this testimony because Mr. Schellhaas's view of the relationship was irrelevant to the issue of whether Mr. Lambert's actions constituted a business pursuit. This assignment of error is without merit. Mr. Schellhaas's testimony shed light on the nature and extent of the relationship. This evidence is relevant under Rule 401 of the West Virginia Rules of Evidence because it goes toward proving a material fact at trial—whether the business pursuit exclusion provision of the policy would bar recovery under the insurance policy.

2. The building was also used by Quality Reviews, Inc., a business owned by Mr. and Mrs. Schellhaas which performed environmental consulting services.

3. WV Insurance cites as error the fact that the trial court allowed a videotape of the charred remains of the barn to be admitted. It contends

the videotape was irrelevant and unduly prejudicial. We find the trial court did not abuse its discretion in admitting this evidence. *See State v. Dillon*, 191 W.Va. 648, 447 S.E.2d 583 (1994); Syl. pt. 4, *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991). The videotape lasted approximately five minutes. When it was shown to the jury during opening statements, it was played without sound. The videotape also demonstrated the proximity of the burn pit to the barn. The trial court conducted an *in camera* hearing to view the videotape after WV Insurance made its objection known. The trial court found the admission to be proper in lieu of a jury view of the area.

4. ITT Hartford sought $5,490.85 and USAA sought $57,612.53 in subrogation.

the circuit court ordered bifurcation based on the agreement of the parties. All issues, claims, and defenses relating to Counts I and II of the amended complaint, coverage and liability, were set for trial on March 11, 1994. The issue of damages was to be tried at a later date.

On the morning of trial, counsel for WV Insurance objected to the manner in which the case was bifurcated. He stated it was his understanding the coverage issue would be tried first and the liability and damage issues second. The circuit court disagreed that prejudice would result at the mention of insurance. The circuit court noted that insurance companies were involved on both sides of this case, and the jury would necessarily be informed that coverage existed. It stated "this is one of those cases where we very nakedly move forward with full revelation of all of the parties behind the players. It is not going to be a mystery at all there is more than one insurance company involved here.... I think we are going to all be grown ups in the room and let the jury in on it all."

WV Insurance contends that a joint trial on coverage and underlying tort liability is inherently improper because it merely sought a declaratory action on the issues of coverage and liability. In *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989), this Court recognized the real possibility of prejudice should a jury be aware a plaintiff is seeking to recover damages against a defendant's insurance carrier. In *Sizemore*, we held a plaintiff may amend her complaint to add a declaratory judgment count against a defendant's insurance carrier consistent with the remedial purposes of the Uniform Declaratory Judgments Act and for reasons of judicial economy. We stated the coverage issue "should ordinarily be decided first, as it

often may be dispositive of the personal injury litigation." 181 W.Va. at 632–33, 383 S.E.2d at 814. However, this Court in *Sizemore* clearly stated the decision to severe the issues is within the discretion of the trial judge.

ITT Hartford Group and USAA assert WV Insurance waived any argument it may have had on this issue by choosing to include its negligence action with the declaratory judgment action in its amended complaint. Furthermore, ITT and USAA contend that because insurance companies are on either side of this case, the jury would undoubtedly be aware coverage existed even if the coverage issue was bifurcated. Finally, they assert that because WV Insurance waited until the morning of trial to move to separate the issues of coverage and liability, some three years after the complaint was filed, the trial court acted within its discretion to deny such motion.

Based on the foregoing, we find the trial court did not abuse its discretion in joining the issues of coverage and liability. The discussion of insurance coverage in a case of this nature is not necessarily reversible error. *See generally Anderson v. McDonald,* 170 W.Va. 56, 289 S.E.2d 729 (1982); *Coffindaffer v. Coffindaffer,* 161 W.Va. 557, 244 S.E.2d 338 (1978). WV Insurance was not prejudiced by the jury's awareness of insurance coverage when dealing with the issue of liability.[5] Substantial evidence in the record supports the jury verdict that Mr. Lambert was negligent. He was forthcoming in accepting responsibility for the fire and the fact he let it get out of hand. Furthermore, the trial court did bifurcate on the issue of damages to avoid the real prejudice WV Insurance feared—the jury rendering an extravagant verdict on account of insurance.

---

5. The record supports the finding that this was not a meritless case decided on the basis that Mr. Lambert was insured.

"We observe as did the Virginia Court in *Willard v. Aetna Casualty and Surety Company,* 213 Va. 481, 193 S.E.2d 776 (1973), that the purpose of the rule is to protect the insurer and therefore the insurance company is free to waive the rule.

"... We do an injustice not only to the intelligence of jurors, but to the efficacy of the adversary system, when we express undue concern over the quantum of collusive or meritless law suits. There is, to be sure, a difference between the ability to file a suit and to achieve a successful result. It is upon the anvil of litigation that the merit of a case is finally determined. Forged in the heat of trial, few but the meritorious survive." *Coffindaffer v. Coffindaffer,* 161 W.Va. at 567, 244 S.E.2d at 343.

■ Finally, we agree that WV Insurance invited the error of which it now complains. First, it did seek more than a declaratory judgment in the underlying action. It named ITT Hartford Group and USAA as defendants. It alleged Mr. and Mrs. Schellhaas were negligent in causing the fire because they breached their duty to supervise Mr. Lambert. Second, it should not have waited until the morning of trial to move for bifurcation of the coverage issue. We understand that counsel for WV Insurance misunderstood the nature of the trial court's bifurcation order. However, WV Insurance could have been more diligent in protecting its interests in specifically requesting bifurcation of the coverage issue and seeking clarification of the trial court's order below.

## III.

### BUSINESS PURSUITS EXCLUSION

■ WV Insurance contends the trial court erred in denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial because the evidence is undisputed Mr. Lambert was engaged in a business pursuit at the time of the fire and such activity was excluded under the policy.[6] In Syllabus Point 3 of *Silk v. Flat Top Construction, Inc.*, 192 W.Va. 522, 453 S.E.2d 356 (1994), we stated the rule that such exclusionary language is to be strictly construed against the insurer:

> " ' "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *National Mutual Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).' Syllabus Point 1, *Marshall v. Fair*, 187 W.Va. 109, 416 S.E.2d 67 (1992)."

In *Camden Fire Insurance Association v. Johnson*, 170 W.Va. 313, 294 S.E.2d 116 (1982), this Court discussed what entailed a business pursuit within the meaning of an insurance policy's exclusionary clause. Syllabus Point 1 of *Camden* states:

> "The term 'business pursuits', when used in a clause of an insurance policy excluding from personal liability coverage injuries 'arising out of business pursuits of any insured', contemplates a continuous or regular activity engaged in by the insured for

---

**6.** WV Insurance contends the trial court erred in giving a jury instruction regarding the business pursuit exclusion because it was an unduly prejudicial portion of the policy. We disagree. The language of which WV Insurance complains was pulled directly from the insurance policy. Furthermore, when we read the instruction as a whole, it is clear the jury was correctly apprised of the law and the terms of the policy. *See Casteel v. Consolidation Coal Co.*, 181 W.Va. 501, 383 S.E.2d 305 (1989). The instructions regarding business pursuits stated:

> Defendants ITT Hartford and USAA's Instruction No. 4: "A 'business pursuits' clause contained in an insurance policy, designed to exclude from personal injury coverage injuries arising out of business pursuits of any insured, is interpreted under West Virginia law to contemplate continuous or regular activity engaged in by the insured for the purpose of earning a profit or making a living. One may regularly engage in a particular activity for which he or she received compensation without being motivated by the prospect of profit.
> "Therefore, unless the Plaintiff West Virginia Insurance Company proves by a preponderance of the evidence that the services provided by Darrell [*sic*] M. Lambert to the Defendants Schellhaas were continuous or regular and

were done for the purpose of earning a profit or making a living, then the 'business pursuits' exclusion from insurance coverage does not apply, and you may find for the Defendant Darrell [*sic*] M. Lambert on that issue.
> "Circumstances you may consider in arriving at your verdict on this issue, which are not inclusive, are whether Darrell [*sic*] M. Lambert was licensed to carry on his activities, whether he advertised or offered his services to the general public, and whether he was always compensated for rendering such service."
> Defendants Schellhaas' Instruction No. 3: "The Court instructs the jury that under the terms of the policy at issue in this case, business does not include:
> "a. incidental activities that are usually performed by minors; or
> "b. activities that are related to business but are usually viewed as non-business in nature.
> "If you the jury, after considering all the evidence, should conclude that cleaning up of the Schellhaas property conducted by Darrell [*sic*] Lambert is an incidental activity usually performed by minors or if the activities of Darrell [*sic*] Lambert in cleaning up the yard are related to some business but are usually viewed as non-business in nature, then your verdict may be for the Defendants."

the purpose of earning a profit or a livelihood."

See Huggins v. Tri–County Bonding Co., 175 W.Va. 643, 337 S.E.2d 12 (1985).

A review of the record supports the jury's determination that Mr. Lambert was not engaged in a business pursuit within the meaning of this exclusionary clause. He performed a few random odd jobs for Mr. and Mrs. Schellhaas and he was not always compensated for his services. When he did receive payment, he received a minimal amount, much less than his expected hourly rate as a carpenter. Mr. Lambert was unemployed during this time period and did not advertise or seek odd jobs elsewhere. He worked on the Schellhaas barn in part for selfish reasons because he sang with a band that played there. Mr. Lambert's actions were not "a continuous or regular activity for the purpose of earning a profit or making a living." Although Mr. Lambert received payment, his services were more a form of "neighborly or kindred accommodation to a friend" rather than for the purpose of obtaining compensation. Camden, 170 W.Va. at 318, 294 S.E.2d at 120. Furthermore, Mr. Schellhaas could not find any evidence where he paid Mr. Lambert to clean up the yard.

In Syllabus Point 1 of Mildred L.M. v. John O.F., 192 W.Va. 345, 452 S.E.2d 436 (1994), we stated:

"In reviewing a trial court's ruling on a motion for a judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a motion for a judgment not withstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of this Court to reverse the circuit court and to order judgment for the appellant."

A review of the record shows more than sufficient evidence to sustain the jury's verdict. Therefore, we decline to reverse the trial court's refusal to grant WV Insurance's motion for judgment notwithstanding the verdict.

## IV.

## LIABILITY OF DEFENDANTS SCHELLHAAS

■ WV Insurance asserts the trial court erred by granting Mr. and Mrs. Schellhaas's motion for a directed verdict on the issue of liability. It also contends the jury should have been instructed on joint and several liability between Mr. Lambert and Mr. and Mrs. Schellhaas and given a verdict form allowing it to apportion liability. It argues evidence was presented to support a finding that Mr. and Mrs. Schellhaas were also responsible for the fire because they instructed Mr. Lambert to clean the debris from the yard and he was, therefore, under their supervision. The trial court disagreed and found "no evidence of negligence on the part of the Schellhaas and to let it go to the jury would be to invite them to bring back a verdict based only upon speculation and would allow confusion in the jury because there has been no evidence that there was any duty violated or any negligence created [or] any negligent act done by the Schellhaas."

We find the trial court was correct in directing a verdict for Mr. and Mrs. Schellhaas at the close of the evidence. Syllabus Point 3 of Roberts v. Gale, 149 W.Va. 166, 139 S.E.2d 272 (1964), states:

"When the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant."

See Powell v. Time Ins. Co., 181 W.Va. 289, 382 S.E.2d 342 (1989); Syl. pt. 4, Troy Mining Corp. v. Itmann Coal Co., 176 W.Va. 599, 346 S.E.2d 749 (1986). All the evidence presented at trial indicated Mr. Lambert's actions resulted in the barn fire. Mr. Schellhaas merely requested that Mr. Lambert clean the yard and in no way monitored his activities that day. Mr. Schellhaas remained in the house while Mr. Lambert performed these tasks. Mr. Lambert admitted he made

a mistake in leaving the fire unattended to gather more debris. Based on this evidence, we do not find the trial court erred.[7]

## V.

## REMAINING ASSIGNMENTS OF ERROR

We find the remaining three assignments of error are without merit. We therefore decline to address them.[8]

## VI.

## CONCLUSION

For the foregoing reasons the judgment of the Circuit Court of Berkeley County is hereby affirmed.

Affirmed.

7. Interestingly, Mr. Lambert's attorney acknowledged no evidence supported a finding that Mr. and Mrs. Schellhaas were negligent: "Obviously, to put the blame there that is less liability potentially for my client. He realizes that. However, I don't know the evidence supports it. I mean, there is no evidence whatsoever. I would like to argue it. There is no evidence he was supervised in any capacity whatsoever."

8. The remaining assignments of error are: (1) the trial court erred in admitting evidence of WV Insurance's handling of the claim; (2) counsel for each defendant stated it was the "jury's job" to determine whether insurance coverage was available; and (3) counsel for Mr. and Mrs. Schellhaas commented during opening statements that WV Insurance had denied coverage.