490 S.E.2d 675

**WEST VIRGINIA INSURANCE COMPANY, Appellee,**

v.

**Linda E. JACKSON, Appellant.**

No. 23556.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 4, 1997.

Decided July 11, 1997.

David A. Sims, Debra Tedischi Hall, Sims & Hall, Elkins, for Appellee.

James T. Kratovil, Charles Town, for Appellant.

PER CURIAM:

This is an appeal by Linda E. Jackson (hereinafter "Appellant") from a November 3, 1995, order of the Circuit Court of Jefferson County granting summary judgment to West Virginia Insurance Company (hereinafter "Appellee"). The Appellee insurer, as Plaintiff in the underlying matter, filed a declaratory judgment action claiming that a policy issued to the Appellant provided only limited coverage for destruction of a property used as a business. The Appellant insured counterclaimed, alleging bad faith. The lower court granted summary judgment to the Appellee insurer, and the Appellant now appeals, contending that there was a factual issue regarding whether the property was actually being used as a business.

### I.

In April 1993, the Appellant and Richard Bessette[1] purchased homeowners insurance from the Appellee. According to the explicit language of the insurance contract, business property was covered only up to $2500. Mr. Bessette constructed three "marine life support systems"[2] in a garage on the covered property and utilized these tanks in his experimentation with methods designed to extend the shelf life of lobsters and other marine life. Mr. Bessette purchased marine life for experimentation and subsequently sold or gave away any marine life which survived. The Appellant emphasizes that Mr. Bessette was employed elsewhere and experimented with methods of extending the life of marine animals only as a hobby.

In August 1993, the garage containing the marine life support systems was struck by lightening and destroyed by fire. The Appellant filed a $21,248 claim for the value of the garage, tanks, coolers, hoses, and sea salt nutrients used in Mr. Bessette's experimentation. The Appellee maintained that the garage was used as a business and that liability was therefore limited to $2500. On January 3, 1995, the Appellee filed a declaratory judgment action in the lower court, and the Appellant counterclaimed with an allegation of bad faith. The Appellant asserted failure to effect a fair and equitable settlement, the tort of outrage, and willful, wanton, and malicious conduct by the Appellee.

Subsequent to an August 8, 1995, hearing on the Appellee's motion for summary judgment, the lower court found that the property was "business property" within the meaning of the insurance policy and granted the Appellee's motion. The lower court specifically held that the business property was subject to a limit of $2500 under the terms of the policy. The lower court also held that the Appellant's claims of bad faith were not viable. The Appellant appeals to this Court, contending that the lower court erred in ruling that the garage was business property, granting summary judgment, and dismissing the bad faith claim. The Appellant further asserts that there exists a material issue of fact regarding whether the activity in the garage constituted a business activity or simply a hobby. Based upon Mr. Bessette's sale of lobsters and shellfish to friends and co-workers at prices far below market value, the

---

1. Mr. Bessette apparently resides with the Appellant, and he assists the Appellant in her contract work with Chesapeake Products procuring computer-generated signs. The Appellant operates a business called Linda Jackson Engraving, and Mr. Bessette is allegedly paid through that business entity. He formerly worked in the seafood business in Rhode Island for several years.

2. These marine life support systems were apparently large fish tanks and were valued at approximately $13,000.

Appellant maintains that Mr. Bessette was not operating a business.

The Appellee asserts that the issue of profit is immaterial. The evidence reflects that Mr. Bessette traveled to Rhode Island to purchase the marine animals and built the tanks intending to develop an innovative, more effective method of extending the life of marine life. He utilized the garage for this purpose, and he recouped some business costs by selling the marine life.[3] Further, Mr. Bessette borrowed approximately $11,500 from numerous individuals to facilitate the construction of the marine life systems. One of the lenders, Mr. Bob Keller, testified that he loaned Mr. Bessette $2,000 with the understanding that Mr. Keller would be repaid upon the sale of one of the marine life systems.

## II.

### STANDARD OF REVIEW—SUMMARY JUDGMENT

■ The standard of appellate review of a circuit court's entry of summary judgment is de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). In syllabus point one of *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995), we explained as follows:

"'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

In syllabus point two of *Williams*, we continued:

Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

## III.

### BUSINESS PURSUITS EXCLUSION

■ In *Camden Fire Insurance Association v. Johnson*, 170 W.Va. 313, 294 S.E.2d 116 (1982), we encountered the business pursuits exclusion within the homeowners policy of a woman who did occasional babysitting in her home. *Id.* at 314, 294 S.E.2d at 117. In syllabus point one, we explained the "[t]he term 'business pursuits', when used in a clause of an insurance policy excluding from personal liability coverage injuries 'arising out of business pursuits of any insured', contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood." We also cautioned that "[t]he question of whether a particular activity or course of conduct comes within this definition of 'business pursuits' must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case." *Id.* at 316, 294 S.E.2d at 119. We determined in *Camden Fire* that the business pursuits exclusion was inapplicable where the woman babysat as a neighborly or kindred accommodation. *Id.* at 318, 294 S.E.2d at 120.

In *West Virginia Insurance Company v. Lambert*, 193 W.Va. 681, 458 S.E.2d 774 (1995), based upon the guidance of *Camden Fire*, we found that the insured's performance of "a few random odd jobs" and his minimal compensation did not support the insurer's contention that he was engaged in a business pursuit. *Id.* at 686, 458 S.E.2d at 779. Furthermore, we noted that "[h]e worked on the Schellhaas barn in part for selfish reasons because he sang with a band that played there." *Id.* We also found that "[h]is services were more a form of 'neighborly or kindred accommodation to a friend' rather than for the purpose of obtaining compensation." *Id.*, quoting *Camden Fire*, 170 W.Va. at 318, 294 S.E.2d at 120. *See gener-*

---

**3.** For example, if Mr. Bessette purchased 50 lobsters and two died during the experimentation, he would include the cost of the two lost lobsters within the sale price of the remaining 48.

*ally* Annot., Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy, 48 A.L.R.3d 1096 (1973).

## IV.

## CONCLUSION

■ The Appellant has characterized the marine life pursuits as simply a hobby; the Appellee has portrayed Mr. Bessette as an inventor/businessman engaged in the pursuit of business activity designed for ultimate, if not immediate, profit. As in *Lambert,* our conclusion must be premised upon an examination of the performance of the activity itself, the issue of compensation or lack thereof, and the apparent intention of the parties engaged in the pursuit. Was this a "continuous or regular activity ... for the purpose of earning a profit or a livelihood?" *Camden Fire,* 170 W.Va. at 316, 294 S.E.2d at 119. We conclude that it satisfies the definition of business pursuit and that the lower court correctly granted summary judgment in favor of the Appellee. The fact that the marine life systems were not Mr. Bessette's means of providing livelihood is not dispositive on the issue of whether the property was business property. Although Mr. Bessette had not yet profited from the sale of the marine life, the evidence reflects that he was engaged in an attempt to create a marketable technique for extending the shelf life of marine life and sold the lobsters in connection with that goal. He borrowed funds to advance this enterprise. This was not a pursuit simply designed for personal gratification, and to classify it as merely a hobby would be inaccurate.

Affirmed.