No. 13-0692 -	*West Virginia Mutual Insurance Company, Inc. v. Betty J. Adkins, Rayetta D. Baumgardner, Diana L. Boerke, Latha A. Bolen, Charlotte L. Deal, Constance L. DeVore, Teressa D. Hager, Lorenna D. Hankins, Tammy H. Clark, Pamela K. Hatfield, Marcie J. Holton, Linda L. Jones, Patty S. Lewis, Teresa Lovins, Martha J. Martin, Louella Perry, Sherry L. Perry, Janice Pettit, Kimberly A. Roe, Janice Roush, Rebecca Smith, Beulah Stephens, and Debra L. Wise*

**FILED**

**October 23, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Chief Justice, dissenting:

Betty J. Adkins, Rayetta D. Baumgardner, Diana L. Boerke, Latha A. Bolen, Charlotte L. Deal, Constance L. DeVore, Teressa D. Hager, Lorenna D. Hankins, Tammy H. Clark, Pamela K. Hatfield, Marcie J. Holton, Linda L. Jones, Patty S. Lewis, Teresa Lovins, Martha J. Martin, Louella Perry, Sherry L. Perry, Janice Pettit, Kimberly A. Roe, Janice Roush, Rebecca Smith, Beulah Stephens, and Debra L. Wise. Each of these twenty-three women suffered catastrophic injuries caused by West Virginia Mutual Insurance Company, Inc.'s ("West Virginia Mutual"), insureds. Each of these women's lives has been dramatically and permanently changed by the horrific nature and extraordinary extent of their injuries. And each of these women signed a global settlement agreement believing that she would receive her proportionate share of the full policy limits of insurance coverage that had been purchased specifically to compensate patients for the medical negligence of the individual doctor and the medical practice responsible for their grievous harm. Despite the fact that the respondents' injuries were inflicted during two separate policy periods for which

insurance coverage had been purchased, the majority of this Court, with seeming disregard for the traumatic nature of the respondents' injuries, has permitted recovery for only one of these coverage periods, thereby allowing the respondents to receive only one-half of the insurance policy proceeds that should be available to them. From this decision, I resolutely dissent.

For many years, United Health Professionals, Inc. ("UHP"), carried insurance coverage with shared limits under a claims-made policy. In 2008, UHP changed its coverage (1) to provide separate coverage limits for itself distinct from the coverage limits applicable to its individual physicians;[1] (2) to render such coverage retroactive to 2002; and (3) to markedly alter the wording of the operative policy language providing coverage for the respondents' claims in the case *sub judice*. In light of these significant coverage changes, it is clear that the plaintiffs were entitled to the policy limits that they were awarded by the Circuit Court of Kanawha County.

As the majority of the Court observed in its opinion, the operative language of UHP's insurance policy changed significantly in 2008. Prior to that time, the limit of insurance portion of the policy stated that "[t]he Limit of Insurance specified in the **Policy**

_____

[1]The policy provision retaining shared coverage for paramedical employees does not apply to the facts of the case *sub judice*.

2

**Declarations** for each **insured** as the 'annual aggregate' is the total limit of our liability for **damages** for that **insured** resulting from any and all **medical incident(s)** which are first reported during the **policy period**." (Emphasis in original). When the terms of UHP's insurance policy were altered in 2008, the pertinent limit of insurance portion of the policy also was changed to provide that "[t]he limit of insurance specified in the **policy declarations** for each **insured** as the 'annual aggregate' is the total limit of **the Company's** liability for **damages** for that **insured** *resulting from all covered medical incident(s) during the policy period*." (Bolded emphasis in original; italicized emphasis added). This marked departure from the policy's prior language indicates an intention to change the limits of the coverage in the 2008 insurance policy, as well as the coverage for all subsequent years in which this language was included in UHP's policy of insurance. In short, while the prior version of the subject policy language required medical incidents to have been *reported* during the policy period in order to be covered thereunder, the 2010 version of the policy provides coverage for "all covered medical incident(s) *during* the policy period." (Emphasis added). However, it is unclear from the express wording of this language whether the referenced covered medical incidents are required to be reported during the policy period to receive coverage. That requirement, though, is not clearly set forth in the amended language as it was in the prior version. Alternatively, the subject language could require that the medical incidents must have been sustained during the policy period to be covered. Although, this, too, is an unlikely interpretation of the subject language insofar as none of

3

the injuries suffered by the respondents occurred during the 2010 policy period as interpreted by the majority's opinion. Finally, the controverted language could be construed to provide coverage for medical incidents sustained during a period in which coverage was provided by the subject policy and its retroactivity provision. This was the construction the circuit court afforded the policy language when it awarded the respondents the policy coverage limits for both the 2006 and the 2007 policy periods commensurate with when the insureds' medical negligence caused the respondents' injuries.

Although the parties stipulated, during the circuit court proceedings, that the terms of the subject policy of insurance are clear and unambiguous, the determination of whether an insurance policy is ambiguous is a question of law, not of fact, that must be decided by the presiding tribunal. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that . . . shall be reviewed *de novo* on appeal." Syl. pt. 2, in part, *Riffe v. Home Finders Assocs., Inc.*, 205 W. Va. 216, 517 S.E.2d 313 (1999). *See also* Syl. pt. 1, in part, *Berkeley Cnty. Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W. Va. 252, 162 S.E.2d 189 (1968) ("The question as to whether a contract is ambiguous is a question of law to be determined by the court."). This Court has defined "ambiguous" to mean that "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl.

4

pt. 1, *Prete v. Merchants Prop. Ins. Co. of Indiana*, 159 W. Va. 508, 223 S.E.2d 441 (1976). *Accord* Syl. pt. 1, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W. Va. 337, 332 S.E.2d 639 (1985). Given that the subject policy provision is capable of multiple, discordant meanings, the majority should have determined that it was ambiguous and construed it accordingly.

In this vein, the Court previously has held that "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W. Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. United States Fid. & Guar. Co.*, 202 W. Va. 308, 504 S.E.2d 135 (1998). In other words, "[w]here a provision of an insurance policy is ambiguous, it is construed against the drafter, especially when dealing with exceptions and words of limitation." *Payne v. Weston*, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995) (citing Syl. pt. 1, *West Virginia Ins. Co. v. Lambert*, 193 W. Va. 681, 458 S.E.2d 774 (1995)). Moreover, while "'[a]mbiguous . . . provisions of an insurance policy should be construed strictly against the insurer and liberally in favor of the insured, . . . such construction should not be unreasonably applied to contravene the object and plain intent of the parties.' Syllabus Point 2[, in part], *Marson Coal Co.*[, *Inc.*] *v. Insurance Co. of State of Pennsylvania*, 158 W. Va. 146, 210 S.E.2d 747 (1974)." Syl. pt. 6, *Hamric v. Doe*, 201 W. Va. 615, 499 S.E.2d 619 (1997).

5

In this case, the majority should have appreciated the inherent ambiguity in the language resulting from the 2008 policy amendments and included within the subject 2010 policy. Given that ambiguous policy provisions are to be construed against the insurance company drafting such language, the majority correspondingly should have adopted the construction most favorable to the insured, which is the interpretation adopted by the circuit court to find coverage is available to compensate the respondents under both the 2006 and 2007 policies insofar as their injuries were sustained in 2006 and 2007. To interpret the subject policy language in the manner advocated by the majority does nothing to clarify this controverted language and fails to hold West Virginia Mutual accountable for the ambiguity it created in UHP's insurance policy.

Relieving the insurer in this case of its duty to provide coverage for the injuries of the respondents, particularly when such a result is compelled by the ambiguous policy provision that it drafted and incorporated into a policy of insurance that it sold, produces a "result [that] is not fair, and it is not the right thing to do." *Manville Pers. Injury Settlement Trust v. Blankenship*, 231 W. Va. 637, 650, 749 S.E.2d 329, 642 (2013) (Davis, J., dissenting). The twenty-three women seeking a recovery in this case are not acting out of greed or avarice, and they did not cause the injuries for which they seek to be compensated. These ladies are simply trying to gain some measure of recompense for the tragically disfiguring and humiliating injuries they sustained when they sought treatment for a serious

6

medical condition and became the unfortunate victims of severe medical negligence. Accordingly, Betty J. Adkins, Rayetta D. Baumgardner, Diana L. Boerke, Latha A. Bolen, Charlotte L. Deal, Constance L. DeVore, Teressa D. Hager, Lorenna D. Hankins, Tammy H. Clark, Pamela K. Hatfield, Marcie J. Holton, Linda L. Jones, Patty S. Lewis, Teresa Lovins, Martha J. Martin, Louella Perry, Sherry L. Perry, Janice Pettit, Kimberly A. Roe, Janice Roush, Rebecca Smith, Beulah Stephens, and Debra L. Wise deserve to receive the full amount of insurance policy limits that provide coverage for their injuries. UHP purchased insurance specifically to compensate victims of medical negligence caused by its physicians, and West Virginia Mutual wrote UHP's policy for this express purpose. Because the respondents' injuries span two *different* policy periods, *i.e.*, 2006 and 2007, and because the policy's revisions provide retroactive coverage therefor, the respondents should have been permitted to recover the full amount of available coverage limits. From the majority's contrary conclusion, I respectfully dissent.