466 S.E.2d 161

Angela L. PAYNE and Glenville Payne, Plaintiffs Below, Appellants,

v.

Richard L. WESTON and Allstate Insurance Company, A Corporation, Defendants Below, Appellees.

No. 22644.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Dec. 8, 1995.

Vincent J. King, James M. Barber, Hunt & Barber, Charleston, for Appellants.

Benjamin L. Bailey, Stuart A. McMillan, Bowles, Rice, McDavid, Graff & Love, Charleston, for Appellees.

CLECKLEY, Justice:

Angela L. Payne and Glenville Payne, the plaintiffs below and appellants herein, filed suit in the Circuit Court of Kanawha County after Mrs. Payne was injured when her car was struck by a car driven by Richard L. Weston, one of the defendants below and appellants herein. Her husband, Glen-

ville Payne, sought damages for loss of consortium. They appeal the June 10, 1994, order of the circuit court which granted summary judgment to Mr. Weston's insurer, Allstate Insurance Company (Allstate), a defendant below and appellee herein. The circuit court found the language of Mr. Weston's automobile insurance policy prohibited stacking of the liability coverage.[1] On appeal, the plaintiffs assert the policy does not prohibit stacking of liability coverage when multiple vehicles are covered under the same policy.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On August 19, 1991, Mrs. Payne was severely injured when her car was struck head on by Mr. Weston's car on Interstate 79 near the Elkview exit. She underwent various surgical procedures that required hospitalization for more than one month. The plaintiffs allege that to date Mrs. Payne has incurred medical bills in excess of $90,000 and has been unable to return to work.

In September of 1992, the plaintiffs filed suit against Mr. Weston and Allstate. Allstate answered the complaint and filed a counterclaim seeking a declaration of the coverage limits available under Mr. Weston's insurance policy with Allstate. Mr. Weston's policy contained bodily injury liability limits of $300,000 per person and $500,000 per accident. In addition to the 1985 Chevrolet Blazer involved in the accident, Mr. Weston owned a 1986 Mercury Sable that was covered by the automobile insurance policy. In October of 1992, a settlement was reached whereby the plaintiffs received $300,000 from Allstate to cover the per person limit of the policy. Mr. Weston was released from all personal liability for damages in excess of his insurance coverage. The plaintiffs were able to pursue recovery from Allstate for any additional money available under the policy.[2]

The plaintiffs and defendants filed motions for summary judgment. On July 15, 1993, the circuit court conducted a hearing to allow the parties to present arguments on this issue. The circuit judge who conducted this hearing retired from the bench before entering an order and the case was assigned to a successor judge. Another hearing was held on June 1, 1994. Following this hearing, the circuit court found:

> "[T]he separability clause and limitations of liability clause at issue herein unambiguously state that liability limits apply to each car separately and that the 'each person' limit is the limit of liability for all damages sustained by any one person in any one occurrence. Therefore this Court concludes that the plaintiffs cannot stack the liability coverage for both of Weston's two vehicles, but instead, are only entitled to $300,000, the per person limit shown on the declaration sheets."

Accordingly, summary judgment was granted in favor of the defendants.

The sole issue in this appeal is whether the language of the policy allows the plaintiffs recovery up to the aggregated or stacked limits of the liability policy covering both of Mr. Weston's vehicles—the 1985 Blazer involved in the accident and his 1986 Sable—which would leave Allstate with a total potential liability of $600,000 (twice the $300,000 per person limit). Before discussing the parties' arguments, we underscore two points of utmost importance: (1) this case deals only with the *liability* coverage of the tortfeasor and not with uninsured or underinsured motorist coverage; and (2) Mr. Weston has one policy covering the two vehicles and received a multi-car discount.

## II.

### STANDARD OF REVIEW

#### A.

##### *Summary Judgment*

On appeal, we conduct a *de novo* review of the circuit court's decision to grant

---

1. "Stacking" in this context means multiplying the amount of coverage under the policy per each vehicle covered by the policy. For a general discussion of "stacking," see 7 Am.Jur.2d *Automobile Insurance* § 326 (1980).

2. In January of 1993, the plaintiffs received $200,000 from their insurer, State Farm Insurance Company, pursuant to the stacked limits of their underinsured coverage available from their two vehicles. *See State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990).

summary judgment on behalf of Allstate. Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Indeed, we review a circuit court's award of summary judgment under the same standards that the circuit court initially applied to determine whether summary judgment was appropriate. *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995). Summary judgment is mandated if the record, when reviewed most favorably to the nonmoving party, discloses "that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, in part, *Aetna Casualty & Surety Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). *See Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). Summary judgment is not a remedy to be exercised at the circuit court's option; it must be granted when there is no genuine dispute over a material fact.

▆▆▆ On the other hand, if the evidence would allow a reasonable jury to return a verdict for the nonmoving party, then summary judgment will not lie. Summary judgment will be affirmed only if we are convinced, after an independent review of the record, that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Material facts are those necessary to the proof of a claim or defense and are determined by reference to the substantive law. Where the unresolved issues are primarily legal rather factual, summary judgment is particularly appropriate.

▆▆▆ Because the material facts are not in dispute in this case, the only issue before this Court is the legal question of determining the proper coverage of the liability in-surance contract. We, therefore, find the matter was ripe for summary judgment. Accordingly, if there are no genuine issues of material fact as to the policy's coverage, the defendants are entitled to summary judgment on the plaintiffs' claim for additional insurance coverage.

"[T]he plain language of Rule 56(c) [of the Federal Rules of Civil Procedure] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986).

The plaintiffs' burden of proof is easily stated. Under West Virginia law, the plaintiffs must prove both the existence of an applicable insurance contract and its material terms. It is only when the plaintiffs have established a prima facie case of coverage that the burden of production shifts to the defendants. In this context, the plaintiffs must present sufficient evidence to show the existence of each element of their case on which they will bear the burden at trial.

### B.

#### Insurance Contract

▆▆▆ The pertinent provisions of the automobile liability policy at issue are set forth in the footnote.[3] The interpretation of

---

**3.** The dollar amounts applicable are listed in the declaration sheet as "$300,000 each person—$500,000 each occurrence." Section I is the "Liability Protection" section which provides, in part:

 "Allstate will pay for an insured all damages which the insured shall be legally obligated to pay because of:
 "1. bodily injury sustained by any person, and

"2. injury to or destruction of property[.]

\* \* \* \* \* \*

"The limit of bodily injury liability stated in the declarations for Coverage AA as applicable to:
"1. *'each person'* is the limit of Allstate's liability for all damages arising out of bodily injury sustained by one person in any one occurrence;
"2. *'each occurrence'* is, subject to the above provision respecting each person, the total limit of Allstate's liability for all such

an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal. *Williams v. Precision Coil, Inc.*, 194 W.Va. at 62 n. 18, 459 S.E.2d at 339 n. 18. In West Virginia, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We recognize the well-settled principle of law that this Court will apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason. Our primary concern is to give effect to the plain meaning of the policy and, in doing so, we construe all parts of the document together. We will not rewrite the terms of the policy; instead, we enforce it as written. Syllabus Point 1 of *Russell v. State Automobile Mutual Insurance Company*, 188 W.Va. 81, 422 S.E.2d 803 (1992), states: "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970)." Thus, we are to ascertain the meaning of the policy as manifested by its language.

The term "ambiguity" is defined as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]" Syl. pt. 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985). Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of *fact* be submitted to the jury as to the meaning of the contract. It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become a question of fact. Where a provision of an insurance policy is ambiguous, it is construed against the drafter, especially when dealing with exceptions and words of limitation. *See* Syl. pt. 1, *West Virginia Ins. Co. v. Lambert*, 193 W.Va. 681, 458 S.E.2d 774 (1995).

However, a court should read policy provisions to avoid ambiguities and not torture the language to create them. "'If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.'" *Williams v. Precision Coil, Inc.*, 194 W.Va. at 66 n. 26, 459 S.E.2d at 343 n. 26, *quoting Goodman v. Resolution Trust Corp.* 7 F.3d 1123, 1126 (4th Cir.1993). For the reasons discussed below, we find that the liability section of the involved policy plainly and unambiguously states that the "each person" policy coverage limit is $300,000. The policy also states that "when two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each[.]" We find no support for the plaintiffs' contention that they should recover twice this policy limit merely because Mr. Weston had two vehicles covered by his policy.

## III.

### ANALYSIS

Before beginning our analysis of the liability policy at issue in this case, we believe it is helpful to summarize briefly some of our prior cases dealing with the question of combining and stacking insurance policy coverages. It is apparent that in recent times no area of the law has generated more appellate litigation than that of stacking. We intend today to detail once again when stacking is permitted and when it is not.

In *State Automobile Insurance Co. v. Youler*, 183 W.Va. 556, 396 S.E.2d 737 (1990),

damages arising out of bodily injury sustained by two or more persons as the result of any one occurrence.

"If a single limit of bodily injury liability and property damage liability is stated in the declarations for Coverage AA and BB, such limit as applicable to 'each occurrence' is the total limit of Allstate's liability for all damages as the result of any one occurrence[.]"

The "General Conditions" section states, in pertinent part:

"When two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each[.]"

Justice (now Chief Justice) McHugh, by synthesizing our prior holdings, added clarity to this area of law. In *Youler*, we affirmed our prior holding in *Bell v. State Farm Mutual Automobile Insurance Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974), and found that anti-stacking language in the context of uninsured or underinsured automobile insurance coverage was violative of W.Va.Code, 33–6–31(b) (1982), in which the Legislature articulated the public policy of full indemnification in those situations.[4] *Youler* demonstrates that although our cases recognize freedom of contract in liability insurance, contractual provisions that are contrary to public policy as expressed by the Legislature are not enforceable. *See* Syl. pt. 1, in part, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) ("[s]tatutory provisions mandated by the Uninsured Motorist Law ... may not be altered by insurance policy exclusions").

In this vein, the public policy implications undergirding our decisions in *Bell* and *Youler* are not present when the issue before us is limited to the stacking of liability coverage. In *Youler*, we emphasized that the public policy reasons behind the prohibition of anti-stacking language in the uninsured and underinsured motorist coverage context do not exist when liability coverage is at issue. "[A]ntistacking language in the case of *liability* insurance coverage 'does not violate any applicable insurance statute or regulation[.]' " *Youler*, 183 W.Va. at 565, 396 S.E.2d at 746, *quoting* portions of syl. pt. 5 of *Shamblin, supra.* (Emphasis in original). Our decision in *Shamblin* to enforce the clear anti-stack-

ing language of the liability insurance coverage provision was consistent with our previous holdings in *Bell* and *Youler*.[5] Therefore, we recognized that in the absence of a contrary or controlling statute, the coverage in insurance cases is determined by the language of the policy itself.

We revisited the issue of stacking of uninsured and underinsured motorist coverage in *Russell, supra.* Unlike *Youler*, in which the plaintiffs held two separate policies which both provided such coverage, the plaintiffs in *Russell* held one policy which covered two vehicles. In *Russell*, we held the application of an anti-stacking provision in the policy was not contrary to W.Va.Code, 33–6–31 (1992), when the insured received a multi-car discount because the insured "bargained for only one policy and only one underinsurance motorist coverage endorsement." 188 W.Va. at 85, 422 S.E.2d at 807.[6]

■ In summary, a careful reading of our prior cases suggest there is no common law right to stack coverage available for multiple vehicles under the same policy or under two or more insurance policies. The right to stack must arise from the insurance contract itself (as that is the agreement of the parties) or from a statute (as in the uninsured and underinsured motorist coverage statutes). We find no independent authority for the contention that the policy limits of an insurance policy should be multiplied by the number of vehicles covered by that policy. As to the liability coverage of an insurance policy,

---

4. Specifically, in *Youler*, we held:

"[S]o-called 'antistacking' language in automobile insurance policies is void under *W.Va. Code*, 33–6–31(b), as amended, to the extent that such language is applicable purportedly to uninsured or underinsured motorist coverage, and an insured covered simultaneously by two or more uninsured or underinsured motorist policy endorsements may recover under all of such endorsements up to the aggregated or stacked limits of the same, or up to the amount of the judgment obtained against the uninsured or underinsured motorist, whichever is less, as a result of one accident and injury." 183 W.Va. at 565, 396 S.E.2d at 746.

5. The distinction between uninsured and underinsured motorist coverage versus liability coverage was noted in note 9 of *Shamblin*, 175 W.Va.

at 344, 332 S.E.2d at 645. *"See also* 8C J. Appleman & J. Appleman, *Insurance Law and Practice* § 5083.35, at 293 n. 2 (1981) (there are public policy reasons, stated in statutes, not to limit uninsured or underinsured motorist coverages unduly, whereas liability insurance contracts are essentially private agreements not subject generally to same rules)." *Youler*, 183 W.Va. at 565, 396 S.E.2d at 746.

6. Both the factual and legal climate of the decisions in *Bell* and *Youler* are fundamentally different from the case at bar. In those decisions, this Court was examining uninsured and underinsured coverage provisions and the anti-stacking clause in light of a specific statutory requirement. Conversely, the clause at issue in this appeal deals with liability coverage and is not specifically governed by a West Virginia statute.

public policy is satisfied when there is liability insurance sufficient in an amount to meet minimum requirements of our financial responsibility law. We believe the rule that evolved from our cases is that in the absence of a countervailing public policy or statutory consideration, effect will be given to the anti-stacking provisions in policies issued to the same insured even if the policies were all issued by the same company.

The mere existence of purported ambiguity in an insurance policy does not create a right to stack liability coverage. Ambiguity must involve language in the policy that is related and material to the stacking issue. In other words, ambiguity comes into play only when the language in the policy appears to permit stacking but a clear reading of the policy is made difficult by its language. Our interpretive rules of construction regarding ambiguity require that, under such circumstances, we construe the language against the drafter, the party who had the authority and opportunity to bring about clarity.[7] Thus, in the absence of an applicable statutory provision, to demonstrate a genuine issue of material fact sufficient to withstand a motion for summary judgment, the plaintiffs must point to some clear language in the insurance policy that permits stacking or to some language that leaves a reasonable doubt as to whether stacking was intended by the parties. Outside the context of uninsured and underinsured coverage, the mere

absence of anti-stacking language is insufficient to create a right to stack. In construing the policy, the relevant inquiries must always be "what has the insured purchased" and whether that agreement has been breached by the insurer's failure to allow stacking.

Our review of the policy reveals no clear language permitting stacking nor any ambiguity sufficient to avoid the granting of summary judgment. The language in the liability provision reasonably cannot be subject to divergent interpretations. It plainly states that the policy limit "is the total limit of Allstate's liability for all damages as the result of any one occurrence[.]" Furthermore, the language found in the general conditions provision clearly states "[w]hen two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each[.]" The defendants assert that, applying the plain language of the policy, the plaintiffs' stacking claim must be abandoned. We are compelled to agree.[8]

▪ The plaintiffs do not submit that the policy language is ambiguous or that it could be interpreted in a way to allow for stacking. Instead, they argue that in the absence of clear anti-stacking language, e.g., the type of language relied upon in *Shamblin*, they are entitled to stack the policy limits for both vehicles owned by Mr. Weston. Thus, the precise legal question the plaintiffs posit is

---

7. Words, terms, phrases, and clauses in insurance contracts are to be given their everyday meanings, not hypertechnical or esoteric definitions, but their plain and common meaning. This follows because insureds are not expected to be wordsmiths, schooled in the craft of lexicology and, further, because the law disfavors the employment of arcane, subtle definitions of common words which but promise to confuse even the educated and frustrate the unlearned.

8. Our conclusion is supported in *Rosar v. General Insurance Co. of America*, 41 Wis.2d 95, 163 N.W.2d 129 (1968). In *Rosar*, the plaintiff argued that an ambiguity was created by the use of language identical to that in this case "the terms of this policy shall apply separately to each [vehicle where two or more vehicles were insured under the same policy]." The court relying on an opinion of the Supreme Court of Washington stated:

"We agree with *Pacific Indemnity Co. [v. Thompson*, 56 Wash.2d 715, 355 P.2d 12

(1960)]. We do not find an ambiguity in the condition that '[w]hen two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each.' There was one injured claimant, one owned and described vehicle involved, and one occurrence. The liability insurance purchased by the assured under these circumstances was limited to $10,000." 41 Wis.2d at 101, 163 N.W.2d at 131. (Footnote omitted).

See also *Greer v. Associated Indem. Corp.*, 371 F.2d 29 (5th Cir.1967). In *Pacific Indemnity Co.*, supra, the court stated: "The argument, based on condition No. 4 of the policy (which provides that all of the policy's terms shall apply separately to each described automobile), is that contributing coverage is thereby afforded. However, that provision merely assures the applicability of the policy to whichever car is involved in an accident, or to all the cars, and does no more." 56 Wash.2d at 716, 355 P.2d at 12.

whether the circuit court misinterpreted *Shamblin* in granting summary judgment.

We are quite frankly mystified by the plaintiffs' attempt to draw support solely from our *Shamblin* decision. We find their interpretation of *Shamblin*, suggesting the decision implicitly created some (common law) right to stack liability coverage limits in the absence of anti-stacking language, is incorrect. In *Shamblin*, the appellant, Clarence Shamblin, d/b/a Shamblin's Mobile Cleaning, purchased an automobile liability insurance policy from Nationwide Mutual Insurance Company (Nationwide) to cover several automobiles used in his business. On the day of the accident, three vehicles were traveling along the same route. The drivers of the vehicles were communicating via CB radios to signal each other when it was safe to pass other vehicles. One driver was advised over the radio that it was safe to pass a truck after another driver had done so. However, when he attempted to pass, he collided with the truck and another vehicle, injuring the driver and passenger of the second vehicle.

During the course of the litigation, Nationwide advised Mr. Shamblin that "the automobile liability insurance policy limits for bodily injury and property damage for *each* vehicle would *not* be available ... even if it were determined that more than one of ... [Shamblin's] vehicles contributed to the accident." 175 W.Va. at 339, 332 S.E.2d at 641. (Emphasis in original). A declaratory judgment action was commenced to address this question. Mr. Shamblin argued that the liability limits for each vehicle contributing to the accident should be available. However, the trial court disagreed and found there was only one "occurrence" within the meaning of the policy and, therefore, Nationwide's liability was limited to the bodily injury liability limits—$100,000 per person/$300,000 per occurrence—under the policy. Accordingly, no stacking was allowed.

We affirmed the trial court's decision in *Shamblin*, and held: "If there were two negligent acts of two of the appellant's drivers in this case, the two acts, (1) signalling to pass and (2) passing, happened, ... at or about the time of the accident, and, due to the closeness in time, as concurrent negligence proximately caused the one 'occurrence,' the collision." 175 W.Va. at 343, 332 S.E.2d at 644. We then relied upon the plain language of the policy which stated the limits of liability were "regardless of the number of automobiles to which this policy applies[.]" 175 W.Va. at 344, 332 S.E.2d at 646. Finally, we found that, unlike uninsured and underinsured coverage, anti-stacking language in a liability insurance policy does not violate any applicable statute and/or judicial or public policy. The discussion in *Shamblin* concerning stacking was intended to suggest that, if for no other reason, stacking is not to be allowed where the language of the policy expressly precludes it: "Certainly, 'stacking' is to be denied when, as in the present case, there is express 'anti-stacking' language ('regardless of the number of automobiles to which the policy applies') in the limitation of liability clause." 175 W.Va. at 344, 332 S.E.2d at 646.

■ The appellant in *Shamblin* essentially made two arguments in support of his entitlement to stack. First, he presented a public policy argument that an insurance company would receive unjust enrichment by limiting stacking and still receiving payment of multiple premiums. Second, he contended that an ambiguity was created in the policy merely by the fact that the insured had paid a separate premium. This Court disposed of these issues by suggesting that "[i]n light of the explicit 'anti-stacking' language, the payment of a separate premium for each vehicle does not create an ambiguity in the insurance policy which should be resolved against the insurer." 175 W.Va. at 344, 332 S.E.2d at 646. The Court also had no difficulty disposing of the separate premium argument:

"A limitation of liability clause within an automobile liability insurance policy which limits coverage for any one occurrence, regardless of the number of covered vehicles, does not violate any applicable insurance statute or regulation, and there is no judicial policy that prevents an insurer from so limiting its liability and yet collecting a premium for each covered vehicle because each premium is for the increased

risk of an 'occurrence.'" Syl. pt. 5, *Shamblin, supra.*

Seen in context, the case at bar is factually distinguishable from *Shamblin.*[9] The appellant in *Shamblin* paid a separate premium for each vehicle and apparently was not given any discount for the grouping of the vehicles under one policy.[10] Moreover, the appellant in *Shamblin* sought coverage only for those vehicles determined to be involved in the accident. In *Shamblin,* the driver of the first vehicle arguably contributed to the accident when he gave the go ahead to pass to the driver of the second vehicle involved in the collision. Mr. Shamblin did not seek to stack the liability coverages for all of his vehicles covered by the policy. In this case, however, plaintiffs seek to stack the liability coverage for Mr. Weston's 1986 Sable that was not even involved in the accident with his 1985 Blazer that was in the collision. This clarification is critical because it helps to explain why we find no authority in *Shamblin* for the plaintiffs' position.

■ The point of this analysis is to convey that the *Shamblin* decision is inapposite.[11] Determining the right to stack cannot be divorced from the concept of insurance coverage. While liability insurance coverage is triggered only when the vehicle involved in the accident is covered under the policy, in the absence of policy language, stacking is triggered only when the insured is covered simultaneously by two or more policies providing uninsured or underinsured coverage. To be specific, where uninsured or underinsured coverage is not involved, stacking of liability coverage is permitted only when the insured can point to some specific policy language that authorizes stacking. The absence of clear cut anti-stacking language may be relevant, but it alone does not give rise to stacking especially, where, as in this case, other language limiting stacking appears. Under the typical "per occurrence" and "per injury" type policy, as in this case, liability coverage is triggered if there has been an occurrence causing injury/damage during the policy period. Thus, if the trigger of coverage is an occurrence, e.g., wrongdoing by the insured, and there is only one occurrence, then stacking should not be allowed. In our opinion, this summarizes the better reasoned approach on the legal issue before us, and, as we have suggested herein, the circuit court's holding is consistent with the greater weight of West Virginia authority.

■ Having failed to establish any factual, logical or analytical link between *Shamblin* and the facts of this case, our mission draws to an end. In placing ultimate reliance on *Shamblin,* the plaintiffs misconstrue their substantive burden of proof as we have stated in this case and misapply *Shamblin* in their analysis. Accordingly, we hold that an

9. Even if we were to give the plaintiffs the most liberal interpretation of *Shamblin,* the plaintiffs still have failed to demonstrate a genuine issue of material fact. The language from *Shamblin* seized by the plaintiffs was merely *dicta* at best and was added merely to address arguments made by the parties on appeal. With this point in mind, there is no difference between *Shamblin* and this case. In both cases, the policy language eliminates any opportunity for liability coverage stacking. Thus, in this case, the authority of *Shamblin* is not appellant friendly. To be specific, we neither accept the plaintiffs' theoretical premises, nor, after close perscrutation of the record as a whole, can we conclude that the facts would *support the premises.*

10. We refer to "discounting" only to emphasize the factual distinction between *Shamblin* and the case at bar. As suggested in *Shamblin,* when the policy limits liability coverage to a single vehicle and a single occurrence "regardless of the number of covered vehicles," discounting is immaterial. Even though the policy *sub judice* does not contain the above language, it has other sufficient limiting language to render a further discussion as to discounting irrelevant.

11. The few cases we have found from other jurisdictions that address this issue reach a similar conclusion. In *Farmers Insurance Group v. Stonik By and Through Stonik,* 110 Nev. 64, 867 P.2d 389 (1994), the Supreme Court of Nevada held the only insurance policy that provided liability for a Ford Ranger accident was the contract for that Ford Ranger notwithstanding the fact that the insureds owned two other vehicles insured by the same company. Similarly, in *First National Insurance Co. of America v. Clark,* 899 S.W.2d 520 (Mo.1995), an insured was involved in an accident with one of his vehicles, a leased Chevrolet Blazer, and received the limits of the Blazer's liability policy. He also sought the liability limits of his policy on a Ford Mustang that he owned. The Supreme Court of Missouri enforced the language of the policy prohibiting interpolicy stacking as it was not against public policy.

insured is not entitled to stack liability coverages for every vehicle covered by his or her policy when the insured received a multi-car discount, when only one vehicle was involved in the accident, and when the policy contains language limiting the insurer's liability ("when two or more automobiles are insured by this policy, the terms of this policy shall apply separately to each" and the bodily injury liability limit "is the total limit of . . . liability for all damages as the result of any one occurrence"). *See also Helmick v. Jones,* 192 W.Va. 317, 452 S.E.2d 408 (1994). Thus, our conclusion is supported by a clear reading of the insurance policy and public policy rationales.

## IV.

## CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.

MILLER, Retired Justice sitting by temporary assignment.

ALBRIGHT, Justice did not participate.