**Gregory A. GROVES and Judith Haugh Groves, Plaintiffs,**

**v.**

**John DOE, an unknown adjustor, and/or claims representative for Defendant, Erie Insurance Company, Erie Insurance Company, Erie Insurance Exchange and Erie Insurance Property & Casualty Company, Defendants.**

**No. CIV.A.1:03 CV 204.**

United States District Court, N.D. West Virginia.

Aug. 19, 2004.

Timothy J. Manchin, Manchin & Aloi, P.L.L.C., Fairmont, WV, for plaintiffs, Gregory A. Groves and Judith Haugh Groves.

Laurie Cryster Barbe, Steptoe & Johnson, Morgantown, WV, Daniel C. Cooper, Jamison H. Cropp, Steptoe & Johnson, Clarksburg, WV, for defendants, Erie Insurance Company, Erie Insurance Exchange, Erie Insurance Property & Casualty Company.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

KEELEY, District Judge.

Before the Court is a motion for summary judgment filed by the defendants, Erie Insurance Company, Erie Insurance Exchange, and Erie Insurance Property & Casualty Company (the "Erie Defendants"). The motion is fully briefed and ripe for review. For the following reasons, the Court finds that the insurance policy issued by Erie Insurance Property & Casualty Company does not cover negligent subcontractor work performed on the home of the plaintiffs, Gregory A. Groves and Judith Haugh Groves (the "Groveses"). Thus, the Court **GRANTS** the Erie Defendants' motion for summary judgment.

## I. BACKGROUND

### A. The Underlying Case

On or around March 7, 1998, the Groveses initially contacted Jerry N. Bland d/b/a J.B.'s General Contracting ("Bland") to solicit a bid for the construction of a new home. On April 16, 1998, they entered into a contract that required Bland to construct a home for the Groveses in a good and workmanlike manner. The Groveses understood this agreement to be a fixed-price contract in the amount of $289,221, subject to certain variations.

On May 7, 1999, Bland filed suit against the Groveses in the Circuit Court of Harrison County, West Virginia, seeking dam-

ages for the Groveses' failure to pay amounts owed under the construction contract. The Groveses counterclaimed, alleging that Bland failed to complete construction and perform construction in a good and workmanlike manner. After a bench trial, the circuit court ruled in favor of the Groveses. The damage award totaled $63,400.71: $6,243.40 for the reasonable costs necessary to complete the home; $4,957.34 for overpayment to Bland; and $52,199.97 to repair defects in the home's construction.

## B. The Current Suit Against the Erie Defendants

The Groveses subsequently initiated this action against the Erie Defendants[1] and John Doe, an unknown claims representative for those defendants, in the Circuit Court of Harrison County, West Virginia. The Erie Defendants removed the case to this Court on September 18, 2003.

In the instant case, the Groveses maintain that their damage award from the underlying case is covered under a liability insurance policy issued to Bland by the Erie Defendants. The Erie Defendants, however, contend that Erie Insurance Company and Erie Insurance Exchange are not proper defendants to this action because they did not issue the policy in dispute. They further assert that, in any event, the insurance policy does not cover the damages claimed by the Groveses. Finally, they argue that they cannot be held liable for common law breach of the duty of good faith and fair dealing because the

Groveses were not parties to the insurance policy.

## C. Pertinent Policy Language

Erie Insurance Property and Casualty Company issued a Fivestar Contractors Policy, number Q32–8020011 (the "Policy"), to Jerry N. Bland d/b/a J.B. General Contracting, effective August 30, 1998 to August 30, 1999. With respect to property damage coverage ("Coverage E"), the Policy states the following:

> We will pay for damages because of ... **property damage** for which the law holds **anyone we protect** responsible and which are covered by **your** policy. We cover only ... **property damage** which occurs during the policy period. The ... **property damage** must be caused by an **occurrence** which takes place in the covered territory.[2]

(Def. Mot. Summ. J., Ex. B at 18.)[3] The Policy defines "we" as Erie Insurance Property and Casualty Company. (*Id.* at 7.)

> "Property damage" means:
> 1. physical injury to or destruction of tangible property including loss of its use. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
> 2. loss of use of tangible property which is not physically injured or destroyed. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

(*Id.* at 6.) An "occurrence" is "an accident, including continuous or repeated exposure

---

1. Although the Groveses originally named four defendants, the only proper defendant is Erie Insurance Property and Casualty Company, the sole issuer of the disputed Policy.

2. All bold lettering occurs in the original text of the Policy and denotes a term that is explicitly defined elsewhere in the Policy.

3. Each party submitted a different version of the Policy, presumably issued in different years. In every material respect, however, the substantive Policy provisions are identical in both versions.

to the same general, harmful conditions." (*Id.*)

Regarding owner and contractor liability in particular ("Coverage H"), the Policy similarly reads:

We will pay for damages because of ... **property damage** arising out of:

1. operations performed for you by contractors, or

2. **your** acts or omissions in connection with the general supervision of the operations

for which the law holds **anyone we protect** responsible and which are covered by your policy. **We** cover only ... **property damage** which occurs during the policy period. The ... **property damage** must be caused by an **occurrence** which takes place in the covered territory.[4]

(*Id.* at 18.)

## II. STANDARD OF LAW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that the facts are undisputed. Thus, the Court need only determine whether the Erie Defendants or the Groveses are entitled to judgment as a matter of law.

## III. ANALYSIS

The overarching issue in this case is whether the Policy covers property damage arising out of negligent workmanship by Bland or his subcontractors. To ascertain the extent of the Policy's coverage, the Court must "apply, and not interpret, the plain and ordinary meaning of an insurance contract in the absence of ambiguity or some other compelling reason." *Payne v. Weston,* 195 W.Va. 502, 466 S.E.2d 161, 166 (1995). Moreover, the Court "should read policy provisions to avoid ambiguities and not torture the language to create them." *Id.*

In sum, the parties wrangle over the breadth of the Policy's coverage in two respects. First, they dispute whether Bland's (or his subcontractor's) faulty workmanship constitutes an "occurrence," which the Policy would cover. Second, the parties argue about whether a certain exclusion in the Policy that is inapplicable to subcontractors consequently creates coverage for subcontractors for their negligent work.

■ As an initial matter, the Court finds that, under the Policy, negligence cannot be an "occurrence." The Policy defines "occurrence" as an "accident." Although an occurrence "includ[es] continuous or repeated exposure to the same general, harmful conditions," it must nevertheless be an accident. The West Virginia Supreme Court recently noted that the meaning of "accident" is unambiguous, and approvingly quoted the following definition:

an 'accident' generally means an unusual, unexpected and unforeseen event.... An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.... To be an acci-

---

**4.** The Groveses cited this provision in their response to the summary judgment motion, but the Erie Defendants made no reference to it in their briefings. Undoubtedly, this portion of the Policy is relevant to the case at bar because Bland, the insured, was a contractor. As this Memorandum Opinion establishes, however, the application of either provision produces the same result in this case.

dent, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

*W. Va. Fire & Cas. Co. v. Marko,* 602 S.E.2d 483, 492, 2004 WL 1144050, at \*8, 2004 W. Va. LEXIS 34, at \*23 (W.Va.2004) (quoting *Harrison Plumbing & Heating, Inc. v. N.H. Ins. Group,* 37 Wash.App. 621, 681 P.2d 875, 878 (1984)) (other quotation and internal citations omitted).

To be actionable, an individual's negligence must have been "reasonably expected to produce an injury." Syl. Pt. 6, *Aikens v. Debow,* 208 W.Va. 486, 541 S.E.2d 576 (2000). The cause and result of an accident, by contrast, are "unforeseen, involuntary, unexpected, and unusual." Thus, the unambiguous definition of "accident" does not encompass negligent acts. Accordingly, the negligent workmanship by Bland or his subcontractors is not an "occurrence" and receives no coverage under the Policy.

Moreover, even if faulty workmanship constituted an "occurrence," the Policy still would not offer coverage. According to the relevant exclusionary section of the Policy:

We do not cover under … Property Damage Liability (Coverage E) [ ] and Owners' and Contractors' Protective Liability (Coverage H):

. . . .

8. **property damage** to **impaired property** or tangible property not physically injured or destroyed, resulting from:

 a. delay in or lack of performance on a contract or agreement by or for **you**; or

 b. a defect, deficiency, inadequacy or dangerous condition in … **your work**[ ] or work performed for **you.**

**We** will pay for loss of use of **impaired property** or other tangible property resulting from sudden and accidental physical damage to … **your work**[ ] or work performed for **you** after it has been put to its intended use.[5]

(*Id.* at 20, 21.) "Impaired property" is tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

1. the **impaired property** incorporates your product or your work that is known or thought to be defective, deficient, inadequate, or dangerous; or

2. **you** have failed to fulfill the terms of the contract or agreement;

if such property can be restored to use by:

1. repairing, replacing, adjusting, or removing **your product** or **your work**; or

2. **your** fulfilling the terms of the contract or agreement.

(*Id.* at 5.) Notably, "your work" is defined as follows:

1. work or operations performed by **you** or on **your** behalf;

2. materials, parts or equipment furnished in connection with such work or operations.

Your work includes:

1. warranties or representations made at any time with respect to the fitness, quality, durabili-

---

5. This qualified liability coverage is consistent with the Policy's general coverage of "property damage," which must be caused by an "occurrence," i.e., "an *accident,* including continuous or repeated exposure to the same general, harmful conditions." (Def. Mot. Summ. J., Ex. B at 6.) (emphasis added). Moreover, there is no evidence in this case of "sudden and accidental physical damage."

ty, or performance of your **work**; and

2. the providing of or failure to provide warnings or instructions.

(*Id.* at 7.)

 In the case at bar, the Groveses seek liability coverage for damages caused by negligent subcontractor work on their home. According to the Policy, their home is either "impaired property or tangible property not physically injured or destroyed." Any negligent work on that home performed by Bland or those on his behalf (including subcontractors) was necessarily "defective, deficient, or inadequate" work. *See Black's Law Dictionary* (8th ed. 2004) (WESTLAW) (defining "negligence" as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm"). Moreover, the failure to construct the home in a good and workmanlike manner constitutes a "lack of performance on a contract or agreement," or otherwise, deficient fulfillment of a warranty on construction. Therefore, based on the unambiguous terms of the Policy, insurance coverage does not extend to negligent subcontractor work on the Groveses' home or the failure to construct the home in a good and workmanlike manner. Accordingly, the Groveses' claim is meritless.

 The Groveses' "bad faith" claims also fail as a matter of law. As the Erie Defendants correctly observe, the Groveses' cannot assert a third-party claim "against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." Syl. Pt., *Elmore v. State Farm Mut. Auto. Ins. Co.,* 202 W.Va. 430, 504 S.E.2d 893 (1998). To the extent that they assert a statutory claim for unfair insurance settlement practices under West Virginia Code section 33–11–4(9), they provide no supporting evidence. As such, the Court also rejects their statutory bad faith claim.

## IV. CONCLUSION

In unequivocal terms, the Policy does not cover either negligence or breach of warranty in home construction. Thus, the Court **GRANTS** the defendants' motion for summary judgment (dkt. no. 14) and **DISMISSES** this case from the docket **WITH PREJUDICE**.

It is **SO ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.