# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**ANDREA DALE DYE,**
**Third-Party Defendant Below, Petitioner**

**FILED**
**November 16, 2023**
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)  No. 22-ICA-301** (Circuit Ct. Marion Cnty. No. CC-24-2018-C-110)

**FAMERS & MECHANICS MUTUAL INSURANCE COMPANY OF WEST VIRGINIA,**
**Intervenor & Third-Party Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Andrea Dye appeals the Circuit Court of Marion County's summary judgment award in favor of Farmers & Mechanics Mutual ("F&M") in this declaratory judgment action dated November 10, 2022. F&M filed a response brief in support of the circuit court's order.[1] The issue on appeal is whether the circuit court erred in granting summary judgement in favor of F&M, concluding that Ms. Dye's subject claim under, her F&M's Homeowners insurance policy, is not covered.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' written and oral arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.[2]

This case arises out of a suit for timber theft and property damage brought against Andrea Dye by her neighbors, Gregory and Judy Bradley. In late 2017 and early 2018, the Bradleys alleged that Ms. Dye, who owns an adjoining tract of land to the east of their approximately 65 acres, trespassed on their property and harvested their timber without

---

[1]Ms. Dye is represented by Eric M. Hayhurst, Esq. F&M is represented by Brent K. Kesner, Esq., Ernest G. Hentschel, Esq., and Susan R. Snowden, Esq.

[2]On October 31, 2023, this Court heard Rule 20 oral argument by counsel, in person, however, under Rule 21 of the Rules of Appellate Procedure a memorandum decision affirming the circuit court's order is appropriate.

permission, and other issues not relevant to this case.[3] The Bradleys filed the underlying lawsuit against Ms. Dye and the timber company she hired.

In their Marion County Complaint, filed on July 25, 2018, the Bradleys asserted that their property was damaged because Ms. Dye, either intentionally or negligently directed Jones Hauling Company, who had purchased timber from Ms. Dye and was removing it from her property, to enter onto the Bradleys property and harvest their timber. They further alleged that this trespass damaged the surface of their property, including the soil, surface drainage, and fences. The Bradleys sought compensation for their property damage and treble damages pursuant to W. Va. Code § 61-3-48a (2020) for the unauthorized timbering.

Ms. Dye claims that sometime in late 2015 she was approached by Larry Jones of Jones Hauling who asked for an easement across her property to access the neighboring Hayes' property where he was timbering. He also inquired about possibly timbering Ms. Dye's property and presented her with a "Timber Sale Contract" to review. Mr. Jones told her that he would be timbering another adjacent property belonging to Herbert Hill. Subsequently, Ms. Dye granted Mr. Jones and Jones Hauling the easement over her property for a payment of $500.00. On January 10, 2016, she signed the Timber Sale Contract, in which she agreed to sell, and Mr. Jones agreed to buy, "all standing timber . . . . growing on and forming a part of real property owned by [Ms. Dye]." The Timber Sales Contract further stated that Mr. Jones "hereby represents that he is personally familiar with [Ms. Dye's] property, and the boundary lines delineating the area to be logged." Section Eight of the contract states that "[Mr. Jones] hereby covenants not to cut any line or trees on land owned by other third parties over which a right of way has not been procured . . . ."[4] Ms. Dye claims she gave Mr. Jones a plat regarding the boundaries of her property but made no further representations about her property or what timber she owned. She claims she relied on the contract and Mr. Jones' verbal representations to her that he was familiar with her property and would timber only her property.

---

[3]The Bradleys further asserted that Ms. Dye refused to allow them to access their property via a right-of-way, which had purportedly existed for approximately 150 years. The Bradleys' property is only accessible by vehicle through the easement access road across the Dye property.

[4]Notably, the Timber Sale Contract also identified Mr. Jones as an independent contractor and stated that "[Mr. Jones] "shall indemnify [Ms. Dye] against all claims and liabilities asserted by others arising from or in any manner related to activities connected with this contract[]", included a compensation formula that would be used to determine the exact amount of money Ms. Dye was to receive for the purchase, and a notation that Mr. Jones had insurance.

The record does not reference with certainty when the timbering occurred on Ms. Dye's property, but it is believed to have occurred in early to mid-2016. Ms. Dye claims that she was not aware that while timbering her property and the Hayes' and Hill properties, Jones Hauling crossed onto the Bradleys' property and harvested timber therefrom.

At the time of the alleged timber removal, Ms. Dye was insured by F&M under Homeowners Policy No. HPP0057787. She submitted a claim under the policy to F&M for indemnity and a defense against the Bradleys' lawsuit. F&M advised Ms. Dye by letter dated October 11, 2018, that it would defend her against the Bradleys' claim subject to a full reservation of its rights to contest coverage.[5] F&M has provided representation for Ms. Dye since the underlying litigation ensued by counsel at Bailey & Wyant PLLC, in Martinsburg, WV. She has also been represented by her personal counsel, Eric Hayhurst, who filed this appeal on her behalf.

**Insurance Policy**

Under section II, liability coverages, the F&M policy provides:

> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will: 1) [p]ay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded an "insured; and 2) [p]rovide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

Additionally, under the "Definitions" section, the F&M policy defines the term "occurrence" as follows:

---

[5]The reservation of rights letter noted that the acts defined in the Bradleys' complaint did not appear to constitute an "occurrence" under the policy, as well as exclusions for Earth Movement, Intentional Loss, Personal Liability, Damage to Property of Others, and Punitive and Exemplary Damages Exclusion. Further, the letter cited the definition of a "business" under the policy.

3

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
a. "Bodily injury"; or
b. "Property damage".

Further, the term "business" in the F&M policy is defined as:

"Business" means:
a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or
b. *Any other activity engaged in for money* or other compensation, except the following:
   (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;…[6]

(Emphasis added). The policy provides under section II, exclusions, that, the policy will not provide coverage for:

"[b]odily injury" or "property damage" *arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured"* or employs an "insured". This [e]xclusion [] applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

(Emphasis added).

## Litigation

On October 22, 2018, F&M filed a motion to intervene in the Bradleys' underlying suit in order to seek a declaratory judgment with respect to insurance coverage issues. The

---

[6]Sections two through four of the policy provide: "(2) volunteer activities for which no money is received other than payment for expenses incurred to perform the activity; (3) providing home care services for which no compensation is received, other than mutual exchange of such services; or (4) the rendering of a home day care services to a relative of an "insured".

circuit court granted the motion and the parties conducted discovery regarding the coverage issues and the Bradleys' underlying claims. Upon the close of discovery, F&M filed a motion for summary judgment as to coverage, arguing that there was no "occurrence" as defined by the policy, and even if the acts did fall under an "occurrence," other exclusions in the policy barred coverage. On January 9, 2020, the circuit court denied F&M's motion, concluding that factual issues existed with respect to whether the intentional injury exclusion in the F&M policy would apply. In particular, the circuit court equated the requirement of an "occurrence" to trigger coverage with the intentional act exclusion, and noted:

> Pursuant to West Virginia law, whether a liability claim is barred by an "intentional acts" exclusion or presents an "occurrence" under the policy are equivalent legal issues. W. Virginia Fire & Cas. Co. v. Stanley, 216 W. Va. 40, 48-50, 602 S.E.2d 483, 491-93 (2004) ("There does appear to be general agreement that this language is the equivalent of the intentional tort exclusion. Consequently, we conclude that language in a motor vehicle liability policy defining "accident" to include "bodily injury or property damage the insured neither expected or intended" is generally designed to exclude coverage for an intentional tort such as sexual assault."). Both require an inquiry into the subjective intent of the insured tortfeasor. As such, F&M's arguments under the "occurrence" language and "intentional acts" exclusion in the policy present the same legal issue.

The circuit court then determined that it was F&M's burden to prove facts necessary to support the application of the intentional acts exclusion and noted that F&M had presented no facts that Ms. Dye expected or intended to cause injury or harm to the Bradleys. Further, the circuit court held that no other exclusions under the policy were applicable to deny Ms. Dye coverage for the claims asserted in the matter.

On or about January 22, 2020, the Bradleys made a policy limits settlement demand to Ms. Dye and F&M, but then withdrew the demand on April 10, 2020. The withdrawal of a demand within the policy limits purportedly exposed Ms. Dye to the possibility of a judgment that exceeded the policy limits.

On May 12, 2020, all parties engaged in an unsuccessful mediation on the Bradley's claim. During mediation, Ms. Dye made a $100,000 demand to resolve her claim for attorney's fees for substantially prevailing in F&M's declaratory judgment action and her claims for breach of contract and bad faith against F&M. While discussing and negotiating a possible settlement between Ms. Dye and F&M, on May 22, 2020, Susan Snowden, Esq.,

5

counsel for F&M, sent a letter to Ms. Dye making a monetary offer of settlement of $15,000 and stating:

> F&M will further issue to your client an excess protection letter whereby it would agree that in the event that it is unable to resolve the case and a verdict should be returned in excess of the policy limits, that F&M would satisfy the entire amount of the verdict. Such an agreement would completely protect Ms. Dye from any financial exposure. Further F&M would continue to vigorously defend your client against Plaintiffs' claims….

However, a settlement between Ms. Dye and F&M was never reached. F&M claims that the Bradleys' settlement demand to Ms. Dye prompted its adjuster, Rose Casey, to send Ms. Dye a letter dated June 4, 2020, stating that F&M was in receipt of the demand from the Bradleys in the amount of $101,000 (the $100,000 liability limit plus the $1,000 damage to property of others limit.) The letter went on to state, "if we receive a demand within the policy limits and are unable to resolve the matter within policy limits and proceed to trial, that should a verdict be returned in excess of the policy limits, F&M would satisfy the entire amount of the verdict." On October 14, 2020, the Bradley's reiterated their policy limits demand of $101,000, noting that the demand expired on October 21, 2020, because jury selection was scheduled to begin the following day.

On October 19, 2020, Ms. Dye filed a motion for summary judgment regarding the declaratory judgment action, which is the subject of this appeal. In her motion, she argued that based upon the representations of F&M and its attorney in the June 4, 2020, letter, the sole remaining "occurrence" issue in the declaratory judgement action, was moot.[7] Subsequently, on December 10, 2020, the F&M adjuster, Ms. Casey, issued another letter to Ms. Dye, seeking to clarify her prior letter regarding indemnification under the policy. That letter stated, in pertinent part:

> Based upon recent motions in the above-referenced case, it appears that F&M's intent with respect to covering any potential excess verdict may have been misinterpreted by you. Please understand that my letter of June 4, 2020[,] should not be construed as expressing F&M's intent to abandon or relinquish F&M's rights under the insurance policy and its pursuit of its declaratory judgment action. A clear reading of the Circuit Court's order on F&M's Motion for Summary

---

[7] Ms. Dye argued that based on the letter F&M waived its coverage position and forfeited all of its prior reservation of rights.

Judgment in this matter leaves open certain factual determinations which impact the coverage available. Thus, to clear up any confusion, please know that F&M's and Defendant Dye's rights and obligations under the insurance contract remain subject to and contingent upon resolution of the pending declaratory judgment action in this matter, including a jury's determination of key coverage facts.

F&M then filed its response to Ms. Dye's summary judgment motion on December 14, 2020, which cited Ms. Casey's December 10, 2020, letter, and argued that F&M never waived its reservation of rights as to coverage and was not estopped from denying coverage. F&M also noted that the question of whether Ms. Dye acted intentionally remained to be decided and argued that under West Virginia law, the principles of waiver and estoppel are inoperable to extend coverage beyond the terms of an insurance contract.

On January 20, 2021, F&M filed a supplemental response to Ms. Dye's motion for summary judgment and also filed a request for reconsideration of ruling on coverage issues, in which F&M asked the circuit court to reconsider certain elements of its earlier January 9, 2020, ruling on the coverage issues.[8] On January 25, 2021, the circuit court held a hearing on multiple pending motions and invited the parties to submit any further briefing on the coverage issues along with proposed findings of fact and conclusions of law. On February 8, 2021, Ms. Dye filed a response to the request for reconsideration arguing that F&M was estopped or alternatively had waived the right to assert a separate portion of a business exclusion under the policy.

By order dated March 17, 2021, Ms. Dye was granted summary judgment as to the Bradleys' claims against her in the underlying suit. However, the Bradleys appealed, and the Supreme Court of West Virginia ("SCAWV") reversed the summary judgment award. *See Bradley v. Dye*, 247 W. Va. 100, 875 S.E.2d 238, 247 (2022). Specifically, the SCAWV found that a jury could reasonably conclude that Ms. Dye's actions caused the Bradleys' timber to be cut, damaged, and/or carried away, thereby resulting in liability under West Virginia Code § 61-3-48a. *Id.* at 106-07, 875 S.E.2d at 244-45. The SCAWV also found that Ms. Dye should have realized that she created an unreasonable risk that the Bradleys' land would be logged by the Jones co-defendants, therefore, she owed the Bradleys a duty of care to prevent such logging, and the court concluded the circuit court erred in granting

---

[8]In F&M's request for reconsideration they specifically argued for the first time a business exclusion under a separate portion of the policy, asserting that Ms. Dye's claim was excluded because she was engaged in a business pursuit of cutting timber for a profit. However, from the beginning in the reservation of rights letter F&M cited to the definition of "business", and further reserved the right to rely on other policy language and provisions.

summary judgment to Ms. Dye on the finding that she owed no duty to the Bradleys. *Id.* at 108, 875 S.E.2d at 246. Moreover, the SCAWV concluded that whether Ms. Dye acted "with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others," was a question of fact for a jury's determination, which places the issue of punitive damages before the jury. *Id.* at 107, 875 S.E.2d at 109. The case was remanded to the circuit court. *Id.*

On November 10, 2022, the circuit court entered the order on appeal denying Ms. Dye's motion for summary judgment and granted F&M's request for reconsideration of ruling on coverage issues. The circuit court concluded that F&M did not waive its coverage defenses based on the letters it sent Ms. Dye because it continuously asserted that Ms. Dye's claim was not covered under the policy. Also, the circuit court held that F&M was not estopped from asserting coverage defenses because Ms. Dye failed to show what actions she took or failed to take in reliance upon F&M's statements. Additionally, the circuit court concluded that based on the F&M policy and the policy's definition of "occurrence," Ms. Dye was not covered under the policy because all her allegations concerned intentional conduct, "which by its very nature, cannot constitute an accident or occurrence."[9] Lastly, the circuit court concluded that F&M's policy excludes coverage for liability "arising out of a 'business' engaged in by an insured," and here, Ms. Dye clearly was engaged in a business with Jones Timber Company for profit. The underlying case was stayed pending the outcome of this appeal.

This Court is guided by the following standard of review: "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

> In reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is 'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party.

---

[9]While the circuit court concluded that Ms. Dye's actions did not constitute an "occurrence" under F&M's policy, this Court does not take a position on that argument or assignment of error, because under F&M's policy it excludes property damage arising out of or in connection with a business conducted from an insured location. Thus, for the reasons mentioned under the business pursuits section of this memorandum, Ms. Dye's claim is not covered under F&M's policy because the policy excludes property damage arising out of or in connection with a business conducted from an insured location.

*State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 42, 829 S.E.2d 35, 42 (2019) (quoting *Fayette Co. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), overruled on other grounds by *Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 2014)).

On appeal, Ms. Dye asserts five assignments of error, some of which present overlapping issues; accordingly we consolidate them into four arguments.[10] First, Ms. Dye argues that F&M waived its coverage defenses and is estopped from asserting coverage defenses in this matter based on the June 4, 2020, letter to Ms. Dye, from F&M adjuster, Rose Casey, that F&M would "satisfy the entire amount of the verdict" if a trial verdict is received in excess of the policy limits. Further, she asserts that F&M has waived its coverage defenses or is estopped from asserting coverage based on the May 22, 2020, letter to Ms. Dye from Susan Snowden, Esq., stating that F&M would "completely protect Ms. Dye from any financial exposure…[and] would continue to vigorously defend" her in the underlying suit. Ms. Dye apparently interpreted the June 4, 2020, letter, received in concert with Ms. Snowden's May 22, 2020, letter, to mean that F&M was conceding coverage in the claim and was indicating that it would fully cover any verdict in the claim, even if it exceeded the policy limits. We disagree.

F&M claims that the June 4, 2020, letter was only meant to address the type of exposure discussed in *Shamblin v. Nationwide,* 183 W. Va. 585, 396 S.E.2d 766 (1990). In *Shamblin* an insurer failed to settle a covered claim within policy limits when it had the opportunity to do so, and the SCAWV found the insurer was liable for the verdict that was in excess of the insurer's policy limits. *See id.* The *Shamblin* Court reasoned that the insurer was liable for that excess verdict, stating,

> [w]e believe that wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to so settle and where such settlement within policy limits would release the insured from any and all personal liability, that the insurer has prima facie failed to act in its insured's best interest and that such failure to so settle prima facie constitutes bad faith towards its insured.

*Id*. at 595, 396 S.E.2d at 776. F&M's position is that its June 4, 2020, letter was not intended to address coverage in this matter but was merely to intended to advise Ms. Dye that it would follow the requirements of *Shamblin* if the court found coverage in her claim.

---

[10]*See Bowden v. Monroe Cnty. Comm'n*, 232 W. Va. 47, 51, 750 S.E.2d 263, 267 (2013) (consolidating redundant assignments of error). We have reordered Ms. Dye's assignments of error to accord to our analysis. *See, e.g., Harlow v. E. Elec., LLC*, 245 W. Va. 188, 195 n. 25, 858 S.E.2d 445, 452 n. 25 (2021).

The SCAWV has held that "[w]aiver may be established by express conduct or impliedly, through inconsistent actions. *Potesta v. U.S. Fid. & Guar. Co.*, 202 W. Va. 308, 315, 504 S.E.2d 135, 142 (1998). To prevail on a claim of waiver, "there must be evidence which demonstrates that a party has intentionally relinquished a known right." *Id.* at 315, 504 S.E.2d at 142 (citation omitted).

> There is no requirement that an insured have detrimentally relied upon an insurer's previously stated reason(s) for denying coverage in order to assert waiver to prevent the insurer, in subsequent litigation, from asserting other, previously articulated reasons for denying coverage. Rather, the insured must show, by clear and convincing evidence where waiver is implied, that the insurer intentionally and knowingly waived the previously unarticulated reason(s) for denying coverage.

*Id*. at 317, 504 S.E.2d at 144. In contrast, the doctrine of estoppel in insurance claims applies when "a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." *Id.* at 315, 504 S.E.2d at 142 (citation omitted). Further,

> [i]n the law of insurance[,] the elements of an estoppel against an insurer are conduct or acts on the part of the insurer which are sufficient to justify a reasonable belief on the part of the insured that the insurer will not insist on a compliance with the provisions of the policy and that the insured in reliance upon such conduct or acts has changed his position to his detriment.

*Id*. at 316, 504 S.E.2d at 143 (citation omitted). In order to prevail on a claim of estoppel, "the insured must prove that s/he was induced to act or to refrain from acting to her/his detriment because of her/his reasonable reliance on the previously stated ground(s) for declination." *Id.* at 317, 504 S.E.2d at 144.

10

Here, while F&M's letters dated June 4, 2022, and May 22, 2020,[11] might not have been the epitome of clarity, we find that F&M did not waive its coverage defenses.[12] Notably, on October 11, 2018, F&M sent Ms. Dye a reservation of rights letter, which outlined the policy, and certain exclusions to the policy that F&M believed would apply to Ms. Dye's lawsuit. Specifically, the policy stated F&M "hereby asserts a complete reservation of all rights concerning its duty to defend and indemnify you under the F&M Homeowners Policy for the claims being asserted." Further, the letter stated, "F&M [] reserves its rights to rely upon other policy language and provisions in the policy if additional facts are discovered and learned which make such terms pertinent to this particular claim." In neither the June 4, 2020, letter nor the May 22, 2020, letter did F&M take a position contrary to their October 11, 2018, reservation of rights letter. Thus, we conclude that F&M did not waive its defense of coverage based on sending the May 22, 2020, and June 4, 2020, letters, which Ms. Dye misinterpreted.[13]

Additionally, there is nothing in the record to suggest that Ms. Dye was induced to act or refrained from acting based on the May 22, 2020, and June 4, 2020, letters. The circuit court concluded that Ms. Dye asserts that she relied on "various statements made by F&M and its counsel, [yet] she does not explain what actions she took or failed to take in reliance upon these statements…[b]ecause detrimental reliance is a necessary element of estoppel, her arguments with regard to estoppel fail as a matter of law." Now, Ms. Dye claims that she forewent further discovery based on the June 4, 2020, and May 22, 2020, letter, however, she does not explain what discovery she could have conducted or how she relied on these letters to her detriment. In fact, the declaratory judgment action was not dismissed, and Ms. Dye was still aware of that F&M was continuing to defend itself. Thus, we conclude that Ms. Dye failed to meet her burden in proving how she relied on these

---

[11]F&M argues that the May 22, 2020, letter to Ms. Dye is inadmissible and should not be considered because it was sent as a settlement offer. However, we decline to address this issue on appeal, as the letter was not included in the circuit court's analysis. Because this letter does not change the outcome or have any underlying effect on the outcome of this case, this Court gives Ms. Dye the benefit of considering the May 22, 2020, letter in our analysis.

[12]Although not sufficient for waiver or estoppel, we certainly understand Ms. Dye's confusion and impression regarding the letters and F&M's intent. Confusion which could have been easily avoided by inclusion of the simple phrase, "subject to our prior reservation of rights."

[13]Also pertinent to these two letters was a letter sent on December 10, 2020, which clarified Ms. Dye's misinterpretation, and made it clear that F&M was not abandoning or relinquishing their rights under the reservation of rights letter or in the declaratory judgment action.

letters to her detriment, other than simply stating that she forewent additional discovery; however, she knew from the beginning that F&M was defending itself in the declaratory judgment action.

In her second assignment of error, Ms. Dye argues that the circuit court erred in finding that waiver or estoppel by F&M could not extend coverage where it does not exist. Ms. Dye asserts that F&M: misrepresented policy provisions and exclusions; took contrary positions against her which are against the facts; made promises to her to pay any verdict and later reneged on those promises; revoked their offer to pay her attorney's fees; and cited exclusions in the litigation to deny coverage after the close of discovery. She argues that all of these actions amount to bad faith on behalf of F&M and coverage should be extended to her.

In response, F&M argues that it has been vehemently defending Ms. Dye in the underlying action and in no way has it acted in bad faith.

"Generally, the principles of waiver and estoppel are inoperable to extend coverage beyond the terms of an insurance contract." *Potesta,* at 320, 504 S.E.2d at 147. The rationale behind this is that insurance companies should not be held liable for a loss for which they have not charged a premium. *See Marlin v. Whetzel Cnty. Bd. of Educ*., 212 W. Va. 215, 225, 569 S.E.2d 462, 472 (2002). In regard to waiver, the *Potesta* Court noted stated that "[t]he doctrine of waiver cannot create coverage where none is contracted for by the parties. Waiver can only be used to continue coverage which would otherwise be lost by a technical non-compliance with a forfeiture clause." *Potesta*, at 320, 504 S.E.2d at 147 (citation omitted). However, there are recognized exceptions to this general principle under estoppel, including, but not limited to:

> [i]nstances where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentations made at the policy's inception resulted in insured being prohibited from procuring the coverage s/he desired; (2) an insured has represented the insured without reservation of rights; and (3) the insurer has acted in bad faith.

*Id.* at 323, 504 S.E.2d at 150.

Here, the first and second exception clearly are not at issue. Ms. Dye does not allege any misrepresentations on behalf of F&M at the inception of the policy. Also, it is clear from the October 11, 2018, reservation of rights letter that F&M adequately reserved its rights in the declaratory judgment action. Further, the record is devoid of any bad faith on behalf of F&M defending itself in the instant action, while also defending Ms. Dye in the underlying claim against the Bradleys. An insurance company simply defending itself in an action over coverage issues does not amount to bad faith. *See State ex. Rel. Universal*

*Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 346 n.18, 801 S.E.2d 216, 224 n.18 (2017) ("an insurer should have the right to defend itself in a plaintiff's declaratory judgment action without risking exposure merely because the strain inherent in litigation discomfits its insured.").

Next, in her third assignment of error, Ms. Dye argues that the circuit court erred in concluding that she was not covered under F&M's policy based on the "business" exclusion. Ms. Dye asserts that she was not engaged in a business as that term is defined under F&M's policy, and West Virginia law. In F&M's policy, "Business" is defined as a "trade, profession or occupation engaged in on a full-time, part-time or occasional basis," and here, she asserts she was not engaged in any business at all. Further, Ms. Dye claims that her case is analogous to *Camden Fire Ins. Ass'n. v. Johnson*, 170 W. Va. 313, 294 S.E.2d 116 (1982), wherein the SCAWV found that a business pursuits exclusion did not apply. *Id. Camden* involved a grandmother who was babysitting her grandchildren in her home. *See id.* The *Camden* Court reasoned:

> We are of the opinion that these facts demonstrate that Sadie Johnson's motive was not to earn a living or to make a profit by keeping children in her home. Rather, she was induced to care for and supervise her grandchildren by the love and affection she held for them and by a desire to assist their mother in finding and keeping a job. Under these circumstances we must conclude that Sadie Johnson was not engaged in a business pursuit at the time of the accident.

*Id.* at 318, 294 S.E.2d at 120. Again, we disagree with Ms. Dye.

"The term 'business pursuits,' when used in a clause of an insurance policy excluding from personal liability coverage injuries 'arising out of business pursuits of any insured,' contemplates a continuous or regular activity engaged in by the insured for the purpose of earning a profit or a livelihood." *Id.* at 316, 294 S.E.2d at 119. "The question of whether a particular activity or course of conduct comes within this definition of 'business pursuits' must necessarily be determined on a case-by-case basis, with due consideration given to the facts and circumstances of each case." *Id.* When considering the language of an insurance policy, the SCAWV has long held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.,* 153 W.Va. 813, 172 S.E.2d 714 (1970).

Here, the circuit court concluded that "[e]ven though Dye did not personally own the logging business, the business pursuits exclusion clearly applies because Dye was

13

'engaged in' making a profit from a business through her contract with Jones."[14] We disagree with the circuit courts conclusion that Ms. Dye was "engaged in" a business; however, we affirm the circuit court's ruling on other grounds for the reasons mentioned below. "[A]n appellate court may affirm a correct decision based on any grounds supported by the record, 'regardless of the ground, reason or theory asserted by the lower court as the basis for its judgment.'" *Pita, LLC. v. Segal*, No. 22-ICA-4, No. 22-ICA-46, 2023 WL 5843577 at *10 (W. Va. September 11, 2023) (quoting *Humphries v. Detch*, 227 W. Va. 627, 635 n.10, 712 S.E.2d 795, 803 n.10 (2011).

In the instant case, the facts are entirely opposite of those in *Camden*. Ms. Dye entered into a contract with the Jones Company for it to purchase standing timber, and thereafter engaged in timbering on her "property." Although the circuit court wrongly concluded that the business exclusion applied because Ms. Dye was "engaged in" a business based on the fact she was making a "profit" from the sale of the timber, F&M's policy explicitly excludes the facts of this case. F&M's policy, expressly excludes coverage "*arising out or in connection with a 'business' conducted from an 'insured location'*". (Emphasis added). Albeit Ms. Dye did not own the logging company and was not herself engaged in that or any related business, the business exclusion under F&M's policy applies because Jones Timber Company was a business conducting business on her property. Jones Timber Company is clearly a "business," and it was timbering tress on Ms. Dye's property, a business activity, which is expressly excluded under the policy.

In her final assignment of error, Ms. Dye argues that the circuit court erred by concluding that she was not covered under F&M's policy because the acts did not constitute an "occurrence" under the policy. "Occurrence" under F&M's policy is defined

---

[14]The circuit court based this conclusion on *Westfield Insurance Company v. Davis*, 232 F.Supp.3d 918 (S.D. W. Va. 2017), where the United States District Court for the Southern District of West Virginia held that the defendants in that case were engaged in a business with the timber company solely because they entered in the contract with the timber company for a profit. While *Davis* is persuasive and substantially similar, we find the facts surrounding the contracts entered into in *Davis* and in this case are different. Here, Ms. Dye was approached by Jones Timber Company, and entered into a contract that incorporated a compensation formula for the purchase of the standing timber, she sold the timber up front and was not guaranteed any profit, rather she was guaranteed 33% from the sale of the timber once it was sold at the mill. To hold that she was "engaged in" a business, simply by selling the timber on her land pursuant to formula based on a compensation formula would distort the term "profit" and would be detrimental to the law on joint ventures in the State. Thus, we find that Ms. Dye was not "engaged in" a business with Jones Timber Company, rather she sold the standing timber on her land for a percentage to be determined by a compensation formula after the timber was cut, removed, and sold at the mill.

as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in:…(b) property damage." Ms. Dye asserts that here, the facts of this case clearly amount to an accident because, while she intended for the trees to be timbered, she did not expect or intend the resulting damage. Syl. Pt. 6, *W. Va. Fire & Cas. Co. v. Stanley*, 216 W. Va. 40, 602 S.E.2d 483 (2004) ("Under an intentional acts exclusion, a policyholder may be denied coverage only if the policy holder (1) committed an intentional act, and (2) expected or intended the specific resulting damage.").

However, because this Court concludes that Ms. Dye's claim is not covered under F&M's policy based on the business exclusion discussion above, we find it unnecessary to address this issue.

Accordingly, we affirm the Circuit Court of Marion County's order dated November 10, 2022.

Affirmed.

**ISSUED:** November 16, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

15